UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF CREVE COEUR, MISSOURI, on behalf of itself and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 4:18-cv-01495-SNLJ |
| NETFLIX, INC., and HULU, LLC, ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NETFLIX, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

### I.  INTRODUCTION

This Court should grant Defendant Netflix, Inc.'s ("Netflix") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

The City of Creve Coeur, through its First Amended Petition, seeks to impose an improper "video service provider fee" on Netflix, purportedly pursuant to the 2007 Video Services Providers Act (the "Act) and the city's own ordinance. Both the Act and the city's ordinance limit the imposition of the fee to those companies that are "video service providers." Under both the Act and the city's ordinance, a company is a "video service provider" if and only if it: 1) distributes "video service" (the definition of which specifically excludes video programming provided over the public Internet), *and* 2) has a "video service authorization" from the Missouri Public Service Commission ("MPSC"). Plaintiff's claims fail as a matter of law because Netflix does not distribute video service (and any video programming that it may distribute is done so exclusively over the public Internet) and Netflix does not have and cannot

1

obtain a video service authorization.  Therefore, the video service provider fees Plaintiff seeks to collect do not apply to Netflix, and this case must be dismissed.

## II.   FACTUAL BACKGROUND

### A. The Netflix Streaming Service

Netflix offers an Internet-based subscription streaming service ("Streaming Service") to customers throughout the country, including in Missouri.  *See* 1st Am. Pet. ¶¶ 2, 20, 24, Exs. A, D.  The Streaming Service is available exclusively over the public Internet.  *See* 1st Am. Pet. ¶¶ 7, 24, 30-33, 35, Exs. A, D.  Streaming Service subscribers can access the Streaming Service "anywhere, anytime, on thousands of devices."  1st Am. Pet. Ex. A at p. 4.  Subscribers can "instantly watch content from Netflix through any internet-connected device . . . that offers the Netflix app, including smart TVs, game consoles, streaming media players, smartphones, and tablets."  *Id*.  The Streaming Service allows subscribers to access content to "watch a wide variety of award-winning TV shows, movies, documentaries, and more … on thousands of internet-connected devices . . . ."  *Id*. at p. 1.  Netflix subscribers can watch unlimited content, all of which is streamed without commercials or other advertising.  *Id*.   The more a subscriber watches, the better Netflix's computer algorithms get at recommending TV shows and movies that match the subscriber's preferences.  *Id*.  Streaming Service memberships are month-to-month subscriptions, and there are no contracts, cancellation fees, or commitments.  *Id*. at p. 2.

### B. The 2007 Video Services Providers Act

#### 1. Enactment of the 2007 Video Services Providers Act

Prior to 2007, cable companies were not regulated at the state level in Missouri.  Rather, each individual political subdivision (there are currently more than 700 such political subdivisions) had the right to require cable companies to obtain franchises and pay fees (in

consideration for those franchises) in order to provide service in that particular political subdivision. *See generally*, Mo. Rev. Stat. § 67.2675, *et seq*.; Request for Judicial Notice ("RJN")[1] Exhibits A, B, and E.

On March 22, 2007, the Governor signed the Act, Mo. Rev. Stat. § 67.2675, *et seq.*, which enacted "a statewide cable franchise agreement that [sought to] promote lower prices and expanded options through increased competition for Missouri cable consumers." RJN Exhibit A. On May 1, 2007, the Governor held a ceremonial bill signing at which he stated that this "legislation will open Missouri's cable market up to competition translating into greater choices and savings for cable subscribers." RJN Exhibit B.

The Act, on its face, was intended to regulate, at the state level, companies providing cable service throughout Missouri. In a number of places, the Act specifically references the Federal Communications Commission (which regulates cable service at the federal level) and the various federal statutes that regulate cable television (title 47 of the United States Code). *See, e.g.*, Mo. Rev. Stat. §§ 67.2677(4), (13), (14); 67.2679.4, .7; and 67.2683.

The Act authorizes Missouri franchise entities (defined as Missouri political subdivisions, *see* Mo. Rev. Stat. § 67.2677(5)), to "collect a video service provider fee equal to not more than five percent of the gross revenues from each video service provider providing video service in the geographic area of such franchise entity." Mo. Rev. Stat. § 67.2689. Pursuant to the Act, the City of Creve Coeur, Missouri is authorized to, and does, collect a 5% fee from "video service provider[s]," as defined in the Act, operating in Creve Coeur. Creve Coeur, Mo. Code, § 635.330(C)(1); *see also* 1st Am. Pet. ¶ 6.

---

[1] Concurrently with this memorandum, Defendant Netflix has filed a Request for Judicial Notice with corresponding exhibits as referenced herein.

### 2. Video Service Providers

A "video service provider" is any entity that distributes "video service" pursuant to a "video service authorization" from the MPSC. Mo. Rev. Stat. § 67.2689(17). "Video service" means "video programming" (in turn defined as "programming provided by or generally considered comparable to programming provided by a television broadcast station") but specifically excludes "video programming" provided over the public Internet. Mo. Rev. Stat. § 67.2689(14). In order to obtain a "video service authorization," a company must apply to the MPSC and submit an affidavit (signed by one of its officer) affirming that, among other things, the video service provider "agrees to comply with all applicable federal and state regulations," "has filed or will timely file with the Federal Communications Commission all forms required by that agency prior to offering video service" and "agrees to comply with all applicable regulations concerning use of the public rights-of-way . . . ." Mo. Rev. Stat. §§ 67.2679.1, .4, .6.

Video service providers must comply with a number of requirements under the Act, including "comply[ing] with all Federal Communications Commission requirements involving the distribution and notification of emergency messages over the emergency alert system applicable to cable operators." Mo. Rev. Stat. § 67.2683. The federal emergency alert system is the national public warning system, the rules of which are delineated in title 47 of the Code of Federal Regulations. *See* RJN Exhibit C at p. 2; Exhibit D at p. 2. The technology of the emergency alert system is not currently compatible with the Internet, and thus, the emergency alert signals cannot be delivered over the public Internet. *See* RJN Exhibit C at p. 8; Exhibit D at p. 8.

The Act also allows the political subdivisions to enact customer service requirements for video service providers; such requirements may include maintaining conveniently located

4

customer service and bill pay centers, and local, toll-free telephone lines for subscribers to call, among other things. *See* Mo. Rev. Stat. § 67.2692. The political subdivisions may also require that video service providers "designate up to three channels for noncommercial public, educational, or governmental 'PEG' use." Mo. Rev. Stat. § 67.2703.1.

### 3. MPSC Reports and Website

Pursuant to the Act, the MPSC published a number of reports regarding developments immediately after the implementation of the Act and for the subsequent four years. The final report, published on August 26, 2011 ("Report"), noted that 40 providers had obtained video service authorizations as of July 8, 2011, and that those companies would have initiated service within 708 political subdivisions by August 27, 2011. RJN Exhibit E at p. 1. The Report also noted that video service providers were investing more than $160 million in new investments to provide video service throughout Missouri. *Id*. The companies listed in the Report are all cable, telephone, or communications companies which provide cable television service. *Id*. at Schedule 1-1. The MPSC maintains a website that allows the public to search for and generate lists of the video service providers authorized to provide video service in Missouri. *See https://www.efis.psc.mo.gov/mpsc/VideoFranchiseAuthorization.html* (last visited 9/4/2018). There are currently 53 cable, telephone, or communications companies with video service authorizations from the MPSC. *See* RJN Exhibit F.

Netflix does not currently have and has never had a video service authorization from the MPSC. *See id*.

### C. Plaintiff's Claims

The Act was intended to regulate cable, telephone, and other companies providing cable television service, not companies such as Netflix which simply make video content available

through its Streaming Service. That is beyond serious question. Notwithstanding this indisputable fact, Plaintiff alleges that pursuant to the Act, its own ordinances, and the ordinances of putative class members, Netflix provides video service, and as such, is required to pay the video service provider fees authorized under the Act. 1st Am. Pet. ¶¶ 1-4. Based on these allegations, Plaintiff asserts the following causes of action: (1) Declaratory Judgment, Injunctive Relief, and an Accounting; (2) Unjust Enrichment; and (3) Unpaid Fees, Interest, and Penalties. 1st Am. Pet. ¶¶ 38-51.

### III.  MOTION TO DISMISS STANDARDS

"The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Johnson v. Special Sch. Dist. of St. Louis Cty.*, 2018 WL 2298822, at *1 (E.D. Mo. May 21, 2018) (quotation omitted). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quotation omitted). However, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Because jurisdiction of this action is based on diversity under the Class Action Fairness Act, Missouri's substantive law applies with respect to the claims asserted by Plaintiff.

*Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) ("Federal district courts sitting in diversity, as the district court in this case, must apply the forum state's substantive law, including its conflict of law rules.").

## IV. ARGUMENT

### A. The First Amended Petition Must Be Dismissed Because Netflix Is Not Subject to the Video Service Provider Fees Authorized by the Act

Plaintiff argues that Netflix should be required to pay video service provider fees or be barred from doing business in Creve Coeur until it pays such fees. Plaintiff's claims must be dismissed because it has failed to state a claim upon which relief can be granted.

The Act authorizes, and Creve Coeur's ordinance specifically imposes, the "video service provider fee" on "[e]ach *video service provider.*" Creve Coeur, Mo. Code § 635.330(C)(1) (emphasis added); *see also* 1st Am. Pet. ¶ 6. Under the Act, a "video service provider" is "any person that distributes video service through a video service network pursuant to a video service authorization." Mo. Rev. Stat. § 67.2689(17). Similarly, the ordinance in Creve Coeur defines a "video service provider" as "any person authorized to distribute video service through a video service network pursuant to a video service authorization." Creve Coeur, Mo. Code § 635.330(A). Accordingly, under both the Act and the Creve Coeur ordinance, in order for Netflix to be subject to the video service provider fee, Plaintiff must prove both that: 1) Netflix distributes video service," *and* 2) Netflix has (or could obtain) a video service authorization.

Rather than requesting this Court to find or pleading facts sufficient to show that Netflix is a *video service provider*, Plaintiff requests only that this Court declare that Netflix provides *video service* and is, therefore, subject to the video service provider fee. *See* 1st Am. Pet. p. 11 ¶¶ A, B. As noted above, video service provider fees are only imposed on *video service providers* and, therefore, Plaintiff's First Amended Petition fails to raise a claim for relief on its

7

face.  But even if Plaintiff were asking this Court to determine that Netflix is a video service provider, Plaintiff's First Amended Petition fails to state a claim for relief because, as explained more fully below, Netflix is not (and cannot be) a video service provider and, accordingly, is not subject to the video service provider fee.

### 1. Netflix Does Not Provide Video Service

Netflix is not a video service provider because it does not provide video service.  "Video service" is defined, in relevant part, as "the provision of video programming provided through wireline facilities located at least in part in the public right-of-way without regard to delivery technology."  Mo. Rev. Stat. § 67.2689(14).  "Video programming," in turn, is defined as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station, as set forth in 47 U.S.C. Section 522(20)."  Mo. Rev. Stat. § 67.2689(13).

Netflix does not provide video programming.[2]  But even if Netflix did provide video programming, such programming is specifically excluded from the definition of video service when provided through the public Internet.  The Act, and Creve Coeur's ordinance, state that the definition of video service "*does not include* … any video programming provided solely as part of and via a service that *enables users to access content*, information, electronic mail, or other services offered *over the public Internet*."  Mo. Rev. Stat. § 67.2689(14) (emphasis added); Creve Coeur, Mo. Code § 635.330(A).  This exclusion describes the Netflix Streaming Service exactly.  Netflix provides a service ("online streaming") through which users access content ("a

---

[2] A court in Kentucky (the only court that has addressed this issue in the context of the Streaming Service) recently found that Netflix does not provide "programming provided by or generally considered comparable to programming provided by a broadcast television station . . . ."  RJN Exhibit G.  In its Opinion and Order, that court stated that "it is unreasonable to conclude that Netflix's streaming service is generally considered comparable to traditional cable and broadcast television services: *the two could not be more different*."  *Id*. at p. 15 (emphasis added).

library of films and television programs") over the public Internet (using the subscribers' own "internet-connected devices").  *See* 1st Am. Pet.  ¶¶ 3, 7; *see also* 1st Am. Pet.  ¶¶ 24, 30-33, 35, Exs. A, D.  Because the Netflix Streaming Service is "provided solely as part of and via a service that enables users to access content … or other services offered over the public Internet," Netflix is not providing video service, is not a video service provider, and is not subject to the video service provider fee.  This exclusion fits squarely within the purpose of the Act: to impose a set of regulations and fees on cable service providers, not Internet-based services like the Streaming Service.  Therefore, Plaintiff's First Amended Petition should be dismissed in its entirety.

      **2. Netflix Is Not a Video Service Provider Because Netflix Does Not Have a Video Service Authorization, nor Could It Meet the Requirements to Obtain a Video Service Authorization**

Even if Netflix did provide video service (it does not), Netflix is not a video service provider because it does not have, has never had, and cannot obtain a video service authorization.  A "video service authorization" is "the right of a video service provider or incumbent cable operator, that secures permission from the public service commission . . . to offer video service to subscribers in a political subdivision."  Mo. Rev. Stat. § 67.2689(15).  The MPSC is the only entity that may grant a video service authorization.  Mo. Rev. Stat. § 67.2679.4.  Netflix does not currently have, nor has it ever had, a "video service authorization" from the MPSC.  *See* RJN Exhibits E, F.  Therefore, by definition, Netflix is not a video service provider subject to the video service provider fee.

Moreover, Netflix cannot obtain the authorization to be a video service provider because Netflix cannot comply with the requirements imposed upon video service providers by the Act.  Just by way of one example, Netflix cannot provide emergency messages over the federal emergency alert system because the system does not allow for those signals to be sent over the

9

Internet.  *See* Mo. Rev. Stat. § 67.2683; RJN Exhibits C, D.  There are a number of other regulatory requirements in the Act with which Netflix, an Internet-based Streaming Service that merely provides access to content through the public Internet, cannot comply.  Therefore, Netflix cannot be a video service provider subject to the video service provider fee, and the First Amended Petition should be dismissed in its entirety.

### B. Even if the First Amended Complaint Is Not Dismissed in Its Entirety, Plaintiff Is Not Entitled to Collect Back Video Service Provider Fees

In its First Amended Petition, Plaintiff requests, among other things, unpaid video service fees for the preceding five years and for the duration of this litigation.  1st Am. Pet. ¶¶ 50-51.  As discussed more fully above, Netflix does not currently have nor has it ever had a video service authorization and is therefore not, by definition, a video service provider.  *See* RJN Exhibits E, F.  Because the fees are only imposed on video service providers (Creve Coeur, Mo. Code § 635.330(C)(1)), Plaintiff's third claim for back unpaid video service provider fees must be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### V. CONCLUSION

For the foregoing reasons, Defendant Netflix, Inc. respectfully requests that this Court dismiss Plaintiff's First Amended Petition with prejudice.

Dated: September 13, 2018

Respectfully submitted,

BERRY SILBERBERG STOKES PC

/s/ Robert P. Berry
Robert P. Berry, #46236MO
Carol M. Silberberg (*pro hac vice* forthcoming)
David C. Baxter, #62165MO
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5881
Facsimile: (314) 480-5884
Email: rberry@berrysilberberg.com
           csilberberg@berrysilberberg.com
           dbaxter@berrysilberberg.com

REED SMITH LLP
Andres Vallejo (*pro hac vice* forthcoming)
Priscilla Ayn Parrett (*pro hac vice* forthcoming)
Rebecca Durham (*pro hac vice* forthcoming)
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: avallejo@reedsmith.com
           pparrett@reedsmith.com
           rdurham@reedsmith.com

*Attorneys for Netflix, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2018, the foregoing was submitted electronically for filing through this Court's CM/ECF system to be served by operation of the Court's electronic filing system upon all counsel of record.

                                              */s/ Robert P. Berry*