# Exhibit G

*Opinion and Order*
*15-CI-01117*

**COMMONWEALTH OF KENTUCKY**
**FRANKLIN CIRCUIT COURT**
**DIVISION II**

**CIVIL ACTION No. 15-CI-01117**



---

FINANCE AND ADMINISTRATION CABINET
COMMONWEALTH OF KENTUCKY
DEPARTMENT OF REVENUE                                      **PETITIONER**

vs.

**NETFLIX, INC.**                                          **RESPONDENT**

---

## OPINION AND ORDER

This matter is before the Court upon Petitioner's Petition for Review of Decision of the Kentucky Board of Tax Appeals. Upon review of the parties' briefs and papers, and after being sufficiently advised, this Court hereby **AFFIRMS** the Final Order of the Kentucky Board of Tax Appeals.

## STATEMENT OF FACTS

This case is an appeal from a final decision of the Kentucky Board of Tax Appeals (hereinafter "KBTA"). The case involves the application of the following taxing statutes: KRS 136.604 (the "Excise Tax")[1], KRS 136.616 (the "Gross Revenues Tax")[2], and KRS 160.614 (the "School Tax")[3]. Respondent, Netflix, Inc. (hereinafter "Netflix") filed refund claims for amounts paid pursuant to the taxes imposed pursuant to KRS 136.604(1), KRS 136.616(2), and KRS 160.614(6). Petitioner, Commonwealth of

---

[1] The Excise Tax, KRS 136.604(1), provides that it is imposed on the "retail purchase of multichannel video programming service provided[.]"
[2] The Gross Revenues Tax, KRS 136.616(2), provides that a tax is imposed on the provider's gross revenues, "received from the provision of multichannel video programming services[.]"
[3] The School Tax, KRS 160.614(6), provides that it "shall include the gross receipts derived from the furnishing of multichannel video programming service[.]"

Kentucky, Finance and Administration Cabinet, Department of Revenue (hereinafter "Revenue"), denied Netflix's refund claims. Netflix appealed the denied refund claims to the KBTA. In its September 23, 2015 Final Order, the KBTA reversed Revenue's final rulings which had required Netflix to pay $259,610.57 for the Gross Revenues Tax and Excise Tax, and $110,007.89 for the School Tax. The KBTA found that Netflix did not qualify as a "multichannel video programming service," rendering the taxing statutes inapplicable and entitling Netflix to a refund of taxes paid pursuant to these statutes. This appeal followed timely.

## ANALYSIS

### I. Standard of Review

KRS 131.370(1) grants any party aggrieved by a final order of the KBTA an opportunity to seek judicial review. In reviewing an agency decision, this Court may only overturn that decision if the agency acted arbitrarily or outside the scope of its statutory authority, if the agency applied an incorrect rule of law or if the decision itself is not supported by substantial evidence on the record. See Kentucky State Racing Commission v. Fuller, 481 S.W.2d 298, 301 (Ky. 1972); see also Kentucky Board of Nursing v. Ward, 890 S.W.2d 641, 642-43 (Ky. Ct. App. 1994). "Judicial review of an administrative agency's action is concerned with the question of arbitrariness." Commonwealth, Transportation Cabinet v. Cornell, 796 S.W.2d 591, 594 (Ky. Ct. App. 1990), quoting Am. Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n, 379 S.W.2d 450, 456 (Ky. 1964). Arbitrariness means "clearly erroneous, and by 'clearly erroneous' we mean unsupported by substantial evidence." Crouch v. Police Merit Board, 773 S.W.2d 461, 464 (Ky. 1988). Substantial evidence is "evidence of

substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." Fuller, 481 S.W.2d at 308.

If it is determined that the Board's findings are supported by substantial evidence, the next inquiry is whether the agency has correctly applied the law to the facts as found. Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc., 91 S.W.3d 575, 578 (Ky. 2002); quoting Southern Bell Tel. & Tel. Co. v. Kentucky Unemployment Ins. Comm'n, 437 S.W.2d 775, 778 (Ky. 1969). Questions of law arising out of administrative proceedings are fully reviewable *de novo* by the courts. Aubrey v. Office of Attorney General, 994 S.W.2d 516, 519 (Ky. Ct. App. 1998). When an administrative agency's findings are supported by substantial evidence, and when the agency has applied the correct rule of law, these findings must be accepted by a reviewing court. Ward, 890 S.W.2d at 642.

## II. Argument

### a. Introduction and KBTA Review

Netflix operates a "streaming service," or "a subscription based service that streams digital movie or television content over the public internet for viewing either on a television or an electronic device." Joint Stipulation of Facts No. 10. The issue presented is whether Netflix's streaming video service is subject to the Gross Revenues Tax, Excise Tax and the School Tax. Whether or not Netflix is subject to these taxing statutes turns on a determination of whether Netflix's streaming service fits within the definition of a "multichannel video programming service." A "multichannel video programming service" is a term of art defined in KRS 136.602(8) as

> "Multichannel video programming service" means programming provided by or generally considered comparable to programming provided by a television broadcast station and shall include but not be limited to:
>
> (a) Cable service;
> (b) Satellite broadcast and wireless cable service; and
> (c) Internet protocol television provided through wireline facilities without regard to delivery technology[.]

Revenue insists that Netflix's streaming service is "generally comparable to programming provided by a television broadcast station." Revenue cites to the preamble to KRS 136.600 *et. seq.*,[4] in support of the proposition that the General Assembly intended to encompass streaming services. Netflix disputes this position and argues that streaming services are not comparable because the streaming service is not similar to the linear type scheduled programming provided by television broadcast stations, cable TV or live programming. Moreover, Netflix argues that "multichannel video programming" is a term of art used in FCC statutes and that streaming services are not considered to be included as multichannel video programming by the federal government or any other state which adopts the term of art in its statutory scheme.

As stated above, Netflix initially reported and remitted the taxes for the period of June 2012 through August 2012 to Revenue and thereafter filed a claim of refund on March 21, 2013. Revenue denied the refund requests by letters dated August 7, 2013 and August 16, 2013. Netflix filed protests to the denials, and on October 16, 2013, Revenue issued its Final Ruling sustaining the denials. On November 12, 2013, Netflix appealed to the KBTA. After conducting an evidentiary hearing on October 21, 2014 and a

---

[4] KRS 136.600 states the purpose of the statutory scheme of KRS 136.600 *et. seq.*, as "[overcoming] limitations placed upon the taxation of communications service by federal legislation that has resulted in inequities and unfairness among providers and consumers of similar services in the Commonwealth [. . .] [and] [providing] enough flexibility to address future changes brought about by industry deregulation, convergence of service offerings, and continued technological advances in communications[.]" KRS 136.600(2) and (4).

supplemental hearing on July 29, 2015, the KBTA issued its Final Order reversing Revenue's denial of Netflix's claim of refund. The KBTA framed the questioned presented as "[. . .] determin[ing], by the plain meaning of Kentucky's statute, whether the legislature manifested an intention to include streaming services in the excise taxation scheme," Final Order at 3. In the Final Order, the KBTA, finding for Netflix, concluded that Netflix does not fit within Kentucky's definition for "multichannel video programming." Thus, the KBTA found the taxing statutes at issue in this case to be inapplicable to Netflix, requiring Revenue to grant Netflix's request for refund. In reaching this conclusion, the KBTA found unpersuasive Netflix's reference to federal statutes, regulations and guidelines with respect to Netflix's regulatory status in the federal scheme, as the Kentucky legislature failed to include reference, definitional or otherwise, to the federal statutory scheme despite demonstration of its ability to do so in the same chapter of the Kentucky Revised Statutes. See Final Order at 4. Instead, the KBTA engaged in a thoughtful discussion the legislative intent behind the relevant statutes and the definition of "multichannel video programming."

Beginning from the position that the statutes in question were unambiguous, the KBTA concluded that the plain meaning of the words should control. See Final Order at 4. Applying the plain meaning rule to the relevant statutes, the KBTA focused heavily on the phrase "generally considered comparable to programming" as used in KRS 136.602(8) to define "multichannel video programming service." See Final Order at 5. The KBTA found that Netflix's streaming service offers movies and television programming that could be watched on broadcast or cable television but concluded that the type of programming offered by Netflix is not generally considered to be comparable

to broadcast or cable television programming. See Final Order at 5. While the word "programming" is not defined in the relevant statutes, the KBTA relied upon the dictionary definition of "programming" – "the designing, scheduling or planning of a program." See Final Order at 5. Concluding that the term "programming" includes more than just the content provided but also the manner in which the content is provided, the KBTA ruled that Netflix's streaming service and traditional cable or broadcast programming are not things generally considered to be comparable. See Final Order at 5. In support of this position, the KBTA found that "[t]he undisputed testimony presented was that Netflix does not provide any live programming, such as sports, news, and awards shows, nor does it provide any linear programming, which means there is a set time schedule for the programming." See Final Order at 6. Acknowledging the similarities between video on demand services commonly offered by broadcast or cable television and Netflix's streaming service, the KBTA found the similarity of video on demand features offered by TV services to be incidental to broadcast and cable television programming and wholly insufficient to make Netflix's streaming services "generally considered to be comparable" to more traditional cable or broadcast television services. See Final Order at 6. In addition to differing content, the KBTA also noted the different presentation method to the consumer: Netflix offers services which can be transmitted to stand alone devices for personal, convenient enjoyment whereas broadcast and cable television require the presence of a television for enjoyment of previously scheduled programming which is available when the television is turned on. See Final Order at 6.

Even though the KBTA found that Netflix does not provide a service that is generally considered to be comparable, the KBTA opined that Netflix could nevertheless

be subject to the taxing statutes in question if Netflix's streaming services fall within the statutory definition of "cable services," which is defined as "the provision of video, audio, or other programming service to purchasers, and the purchaser interaction, if any, required for the selection or use of the video or other programming service, regardless of whether the programming is transmitted over facilities owned or operated by the provider or by one (1) or more other communications service providers." See KRS 136.602(1); Final Order at 7. While the parties stipulated that Netflix's streaming services were not cable services, the KBTA briefly analyzed whether the legislature had defined the term "cable services" broadly enough to overcome the parties' stipulation. Following supplemental briefing and another hearing, the KBTA concluded Netflix's streaming services do not fall within the statutory definition of "cable services" within the context of "multichannel video programming service." For these reasons, as previously noted, the KBTA reversed Revenue's final rulings denying Netflix's claim of refund and granted Netflix a refund as requested. Revenue timely appealed the KBTA's Final Order.

### b. Summary of Arguments on Appeal

In support of its appeal, Revenue encourages this Court to reverse the KBTA's Final Order and conclude that Netflix's streaming service falls within the application of Kentucky's taxing statutes imposed on "multichannel video programming services." Revenue maintains that a plain reading of the statutes in question necessitates the conclusion that the General Assembly intended to include, or leave enough room for growth and interpretation, services like Netflix within the definition of "multichannel video programming service." Revenue's argument combines consideration of the concepts of comparability with competition. Revenue takes exception with the KBTA's

findings – that Netflix's streaming service cannot be considered generally comparable to broadcast or cable television because Netflix's service does not provide either live or linear programming – because the KBTA's findings discount the similarities between Netflix's services and video on-demand TV features offered by traditional television providers. Revenue insists that Netflix's streaming service is generally considered comparable to traditional cable and broadcast television by noting that Netflix's annual report to the Securities and Exchange Commission identifies Netflix's perceived competitors as including "[m]ultichannel video programming distributors with free TV Everywhere applications such as HBO Go or Showtime Anytime in the U.S. and SkyGo or BBC iplayer in the U.K., and other on demand content from cable providers, such as Time Warner and Comcast; direct broadcast satellite providers, such as DIRECTV and Echostar; and telecommunications providers such as AT&T and Verizon." Revenue's position is that Netflix's streaming services are generally considered comparable to traditional cable and broadcast television and that the preamble to the Telecommunications Tax shows the legislature's intent to include streaming services. Revenue's representative stated in his deposition that

> We have broad language that says "shall include" – "multichannel video programming service shall include but not be limited to" – and then it lists [three examples]. [. . .] The context of the legislation and the context of the amendment to the language was to maintain the stability of our tax base and to tax products and services that were comparable in a similar fashion and, in other words, in a business or industry that would be in competition with cable service or with satellite broadcast [and] wireless cable services, or for that matter, Internet protocol television, that it would fall under the umbrella[.]

The plain meaning of the Telecommunications Tax, according to Revenue, envelopes Netflix's streaming service. This is because the KBTA's conclusion that

programming must be both live and linear ignores the statutory definition of "multichannel video programming," which does not include such restrictive limitations. Rather, "multichannel video programming" must be constructed broadly, because the General Assembly conveyed its intent that the listed items in KRS 136.602(8) should not be read as an exhaustive list. Revenue argues that this open ended list, coupled with the expressed intent and purpose statement contained in KRS 136.600(4), that the enactment of the 2005 Telecommunications Tax should "provide[] enough flexibility to address future changes brought about by [...] continued technological advances," requires the Court to reverse the KBTA and find Netflix's streaming services to be within the statutory definition of "multichannel video programming."

In support of affirming the KBTA's Final Order, Netflix characterizes Revenue's statutory interpretation as an expansion of the scope of Kentucky's taxing scheme applicable to "multichannel video streaming services." Netflix insists that Kentucky's taxing scheme is not sufficiently broad to reach Netflix's streaming service. Because the KBTA reached this same conclusion, Netflix urges the Court to affirm the KBTA's Final Order. Netflix characterizes Revenue's position as leading the Court astray, conflating the ideas of comparability and competition. While Netflix acknowledges the content of its annual report to the Securities and Exchange Commission, it also notes that "74% of subscribers to the Streaming Service also subscribe to cable, satellite, or IPTV, and the remaining 26% will often supplement their subscription to the Streaming Service with an antenna to access broadcast television programming." Netflix Brief at 5. Rather than being in competition with traditional cable and broadcast television services, Netflix characterizes itself as a "supplementary service" carried by a majority of its customers in

addition to broadcast, cable, satellite or IPTV services. Based on the plain meaning of the statutory definition and application of the same to the undisputed facts, Netflix argues that its streaming service is not generally considered comparable to traditional cable and broadcast television services. Rather than construing the taxing statutes at issue to cover or apply to any new video service or digital video delivery technology, Netflix urges the Court to affirm the KBTA's narrow construction of the taxing statutes and grant Netflix its claimed refunds.

### c. Judicial Review

The posture of this case requires this Court to review *de novo* whether Netflix is a multichannel video programming service—a question the KBTA answered in the negative—as defined by KRS 136.602(8). Disposition of the issue before the Court requires the Court to construe the statutory definitions and applications with regard to the facts before the Court. If the Court concludes that Netflix provides a multichannel video programming service, then Netflix is subject to the taxing statutes related thereto, as Revenue concluded in its Final Rulings. If the Court concludes that Netflix does not provide a multichannel video programming service, then Netflix is not subject to the taxing statutes related thereto, as the KBTA concluded in its Final Order.

When engaging in the exercise of statutory construction, the Kentucky Supreme Court has stated that "we assume that the '[Legislature] meant exactly what it said, and said exactly what it meant.' Only 'when [it] would produce an injustice or ridiculous result' should we ignore the plain meaning of the statute." Revenue Cabinet v. O'Daniel, 153 S.W.3d 815, 819 (Ky. 2005). "The cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." Jefferson County Bd.

of Educ. v. Fell, 391 S.W.3d 713, 718 (Ky. 2012). KRS 446.080(1) provides that "[a]ll statutes of this state shall be liberally construed with a view to promote their objectives and carry out the intent of the legislature." If a statute is reasonably susceptible to multiple interpretations, courts will reject a construction of a statute that results in discrimination or yields an absurd result. See, e.g., Atlantic Coast Line R. Co. v. Com., 193 S.W.2d 749, 752 (Ky. 1946).

In 2005, the General Assembly established the Telecommunications Tax as a part of the Tax Modernization Act of 2005. The purpose behind the statutory overhaul is evidenced in the five reasons set forth in KRS 136.600: to (1) "[a]ddress an important state interest in providing for a fair, efficient, and uniform method for taxing communications services," and to (2) "[o]vercome [ ] limitations placed upon the taxation of communication service by federal legislation that ha[d] resulted in inequities and unfairness among providers and consumers of similar services in the Commonwealth." See KRS 136.600(1), (2). Most likely, the referenced inequities and unfair limitations related to Congress' prohibition upon the taxation of satellite broadcasters by local jurisdictions in the 1996 Telecommunications Act. That Act exempted satellite providers from taxation, as opposed to cable service providers which remained subject to taxation by local jurisdictions. Kentucky's 2005 legislation was intended to combat the lost revenues to local jurisdictions following the inequitable effects of the 1996 federal legislation. A third reason for the enactment of the Telecommunications Tax was to "[p]rovide enough flexibility to address future changes brought about by industry deregulation, convergence of service offerings, and continued technological advances in communications." See KRS 136.600(4). In 2009, the General Assembly amended the

definition of "multichannel video programming service" to its present definition; it previously had been limited to cable service and satellite broadcast and cable service.

Again, a "multichannel video programming service" means programming provided by or generally considered comparable to programming provided by a television broadcast station and shall include but not be limited to: a) cable service; b) satellite broadcast and wireless cable services; and c) internet protocol television provided through wireline facilities without regard to delivery technology. See KRS 136.602(8). The parties stipulated and the Board concurred that Netflix's streaming service was not any of the three services identified in KRS 136.602(8). The only questions are whether Netflix's streaming service is generally considered comparable to programming provided by one of these three services and whether the General Assembly intended to include a service like Netflix's streaming service within the statutory definition of multichannel video programming service.

Borrowing from the parties' Joint Stipulation of Facts, the Court observes that Netflix is a Delaware corporation with its principal place of business in California. Since 2010, Netflix has sold a subscription-based service which offers streaming digital movie and television content through the Internet. Netflix's customers pay a monthly subscription for the streaming service, which allows the customer to search for, select and view movie and television content maintained in Netflix's online library, using devices owned by the customer, including computers, televisions and personal devices like tablets and iPhones. Netflix operates a set of Internet cloud services through its website, managed by Amazon Web Services. Customers connect to the server by visiting Netflix's internet website or through an application stored on the customer's personal device.

When a customer selects digital content for viewing, the customer's personal device informs the server of the customer's request and then receives the desired content from one of Netflix's internet servers.

The KBTA focused on several facts contained in the parties' Joint Stipulation of Facts concerning Netflix's digital content. First, Netflix does not offer or provide content on any predetermined or set schedule, which is referred to as "linear programming." Customers of Netflix's streaming service must independently contract for Internet services to enjoy Netflix's online library. Netflix does not own any facilities or infrastructure capable of transmitting or otherwise delivering its streaming service to its customers. Netflix does not bundle or otherwise provide streaming service with infrastructure capable of delivering content to its customers' devices.

Netflix argues that, because the language of KRS 136.602(8) does not impose tax on any service simply because it provides video content, by the Department's interpretation of the statute, the Department would enjoy sole and unfettered discretion to determine which services to tax and which to leave untaxed. This impermissible delegation becomes murkier, Netflix argues, combined with the lack of indication as to what the General Assembly meant in the preamble by the phrase "technological advances." It is true that "multichannel video programming service" as a whole phrase is defined by KRS 136.602(8). That definition, though, becomes rather unhelpful when one is tasked with construing the phrase to ascertain the full meaning and decide the question of whether a service is generally considered comparable to the defined and listed services. Consultation to a dictionary is required to break down the concepts behind the statutory definition into the plain meaning of the phrase, which requires analyzing each

individual word used in the phrase. Tax imposition statutes must be construe narrowly, and all ambiguities resolved in favor of the taxpayer—this rule must be followed even more closely when the question before the Court is the matter of pointing out the subjects to be taxed. See WDKY-TV, Inc. v. Revenue Cabinet, 838 S.W.2d 431, 433 (Ky. Ct. App. 1992).

Having thoroughly reviewed the KBTA's factual findings and legal conclusions, the Court is compelled to reach the same conclusion as the KBTA – Netflix does not provide a multichannel video programming service. Netflix's streaming service does not provide content in a multichannel format; Netflix's streaming service does not include the concept of channels. Netflix's content is not linear or sequential programming; the customer selects what to view and when. Netflix does not deliver live content; the customers cannot view sports, news, weather or award shows. Netflix uses algorithms to preselect content for its customers, on an individual basis, based on previously viewed or expressed preferences. This is a vast departure from the linear programming model of traditional cable or broadcast televisions services, where one usually concludes "there's nothing on tv." Contrary to traditional television services, using Netflix enables the customer to craft an entirely unique and personal profile and viewing experience. As Netflix notes, its streaming services allows searches by actor, director, title and cinematic style: akin to the days of yore, when one would travel to the local video rental store to select his or her desired cinematography. Revenue's claim that the KBTA is adding new limitations or requirements to the statutory definition is misguided. Rather, in ascertaining the statutory intent, all the KBTA has done is distill the plain and essential meaning from the words used by the General Assembly. The plain meaning of the statute

simply does not support Revenue's construction, and it is unreasonable to conclude that Netflix's streaming service is generally considered comparable to traditional cable and broadcast televisions services: the two could not be more different.

Revenue's second argument, regarding the legislative intent evidenced by the preamble, is equally unavailing. In truth, Netflix is in competition with traditional cable and broadcast television services. Netflix may even ultimately render these forms of entertainment obsolete, as has been the case with historic video rental stores, like Blockbuster. Regardless of Netflix's ultimate business agenda, it is unreasonable to conclude, as Revenue urges, that the General Assembly in 2005 and 2009 intended to be so wide sweeping in its legislative enactment to subject to taxation every possible new technological development in the field of transmitting digital content for personal enjoyment.

The first rule of statutory construction requires this Court to ascertain the General Assembly's intent in enacting the Telecommunications Act. Pursuant to KRS 446.080(1), statutes are to be construed liberally to promote the stated objectives and legislative intent. The Court must look not only to the specific words used, but also to the statutory scheme as a whole. See County of Harlan v. Appalachian Regional Healthcare, Inc., 85 S.W. 3d 607, 611 (Ky. 2002). When the legislature does not define the words employed in a statute, courts attribute the words used with their plain and ordinary meaning, generally after consulting a dictionary. See generally Perdue v. Com., 411 S.W.3d 786, 791-792 (Ky. Ct. App. 2013) (turning to dictionary to consider plain meaning of term "effecting an arrest"). In reviewing the entire statutory scheme, it is relevant to consider the General Assembly's stated purposes. Netflix correctly notes that it is not the role of

Case: 4:18-cv-01495-SNLJ   Doc. #: 11-7   Filed: 09/13/18   Page: 17 of 19 PageID #: 620

*Opinion and Order*
*15-CI-01117*

Revenue, or any Executive Branch agency, to expand the scope of a tax imposition statute. See KRS 13A.130(1)-(2); see also Appalachian Racing, LLC v. Family Trust Found. of Kentucky, Inc., 423 S.W.3d 726, 738 (Ky. 2014) (standing for the proposition that the Department's role is to collect the taxes imposed by the legislature and not to "*establish* a tax by its own accord").

Revenue relies very heavily on the General Assembly's purpose statement in the preamble to KRS Chapter 136. In the preamble, which was drafted in 2005 when the statutes were originally enacted, the General Assembly evidences an intent to provide a fair, efficient and uniform method of taxation and to provide flexibility for future technological changes. In 2009, though, the General Assembly amended KRS 136.602(8) to its present state, adding the non-exhaustive list of communication services. It is not entirely helpful to review the 2005 legislative intent when attempting to glean the intent of this 2009 amendment. The obvious intent of the 2005 enactment, as stated repeatedly in the record, was to increase local jurisdictional tax bases by taxing cable, broadcast and satellite services, some of which had been exempted from local jurisdiction taxation pursuant to federal law. Previous to the 2009 amendment, the language of KRS 136.602(8) was limited: "Multichannel video programming service" means cable service and satellite broadcast and wireless cable service[.]" See SALES AND USE TAX—DISCOUNTS—TELECOMMUNICATIONS SERVICES, 2007 Kentucky Laws Ch. 141 (HB 360). The 2009 amendment, thus, subjected additional providers to taxation. Therefore, the only reasonable conclusion one can draw from the 2009 amendment was that the General Assembly actively added additional entities to be subject to taxation as multichannel video programming services. This addition cannot be read as broadly as

Revenue desires, as such unchecked discretion in subjecting additional entities to taxation is the role of the legislature, not an executive branch agency.

In sum, the KBTA correctly analyzed the essential similarities among the three listed services in the statute. Even though it is both fair and reasonable to consider competition when considering comparability, Revenue takes the joining of the two concepts altogether too far. The word employed by the General Assembly in KRS 136.602(8) is "comparable," not "in competition with." It is true that comparable things are generally in competition, but Revenue's construction puts too much of an emphasis on competition when the word and concept are absent from the statute.

### III. Conclusion

The parties thoroughly briefed and argued the issues and compiled an extensive record for review. The KBTA's factual findings are supported by substantial evidence in the record. After reviewing the legal conclusions made in the Final Order, which the Court reviewed *de novo*, the Court concludes that the KBTA correctly construed the legislative intent of the taxing statutes at issue and reached the appropriate conclusion. Finding no errors of law, the Court affirms.

**WHEREFORE**, the Final Order of the Kentucky Board of Tax Appeals is **AFFIRMED.**

This order is final and appealable and there is no just cause for delay.

**SO ORDERED**, this __21st__ day of August, 2016.

                                                                                             _____
                                                                                             **THOMAS D. WINGATE**
                                                                                             **Judge, Franklin Circuit Court**

*Opinion and Order*
*15-CI-01117*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Order was mailed, this 23rd day of August, 2016, to the following:

**Hon. Bethany Atkins Rice**
Commonwealth of Kentucky
Finance and Administration Cabinet
Department of Revenue
Office of Legal Services for Revenue
P.O. Box 423
Frankfort, Kentucky 40602-0423
Tel. (502) 564-9581
*Counsel for Petitioner*

**Hon. Andres Vellejo**
**Hon. Thomas H. Steele**
**Hon. James P. Kratochvill**
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105-2482
*Counsel for Respondent Netflix Inc.*
*Admitted Pro Hac Vice*

**Hon. Erica L. Horn**
**Hon. Madonna E. Scheuler**
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
Tel. (859) 231-1093
*Counsel for Respondent Netflix Inc.*

Kentucky Board of Tax Appeals
c/o Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601-3449

_____
Amy Feldman, Franklin County Circuit Court Clerk