**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

CITY OF CREVE COEUR, MISSOURI,
on behalf of itself and all others similarly
situated

                    Plaintiffs,

v.

NETFLIX, INC. and HULU, LLC,

                    Defendants.

Case No.: 18-cv-01495-SNLJ

**HULU, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Hulu, LLC ("Hulu") submits this Memorandum of Law in Support of its

Motion to Dismiss the First Amended Petition (the "Petition") for failure to state a claim

upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

The City of Creve Coeur ("Creve Coeur"), through its Petition, seeks to impose an

improper fee on Hulu that violates Missouri's 2007 Video Services Provider Act (the

"Act").  When the Missouri Legislature passed the Act, it authorized municipalities like

Creve Coeur to impose fees on "video service providers" subject to two important

limitations.  First, the fees cannot be applied to internet content providers like Hulu.

Second, municipalities can only collect fees from providers that have obtained authorization

from the Missouri Public Service Commission ("PSC").  The PSC has not required Hulu to

- 1 -

Case: 4:18-cv-01495-RLW   Doc. #:  13   Filed: 09/13/18   Page: 2 of 10 PageID #: 626

obtain authorization, nor has it provided such authorization.  Creve Coeur knows that its right to collect video service provider fees is limited—it incorporated the limitations as part of its Municipal Code.  But Creve Coeur ignores those limitations in its Petition.

Hulu is a leading streaming service that offers instant access to a premium library of television and movies to more than 20 million subscribers in the United States—including the residents of Creve Coeur.  Hulu willingly pays all properly assessed state and municipal taxes and fees.  But here, Creve Coeur demands a fee that plainly does not apply to Hulu's services, attempts to bypass the statutorily required authorization process before any fee can be collected, and ignores the PSC's exclusive authority over the authorization process.  Hulu (and its Creve Coeur subscribers) should not be required to pay these fees.

For the reasons set forth below, the Court should dismiss the Petition.

## II.    BACKGROUND

### A.    The 2007 Video Services Providers Act

The 2007 Video Services Providers Act (the "Act"), Mo. Rev. Stat. §§ 67.2675, *et seq.*, was passed to facilitate a competitive marketplace for cable television providers that would, in turn, "encourage investment and the deployment of new and innovative services in political subdivisions and provide benefits to the citizens of this state."  *Id*., § 67.2679(1).  The Act creates a framework for a video service provider to obtain a statewide franchise instead of having to obtain separate franchises from individual cities and counties.  This is administered by the Missouri Public Service Commission (the "PSC") and it has exclusive authority over the authorization process.  *Id*., § 67.2679(4).

An entity seeking to provide "video services" in Missouri must first obtain authorization from the PSC.  *Id*., § 67.2679(3).  An entity must file an application covering the relevant geographic areas and provide written notice to the affected political

subdivisions.  *Id*., § 67.2679(5).  The Act requires entities to comply with provisions such as carrying the emergency alert system "applicable to cable operators," *id.*, § 67.2683, and designating up to three "channels" for "noncommercial public, education, or governmental use," *id.*, § 67.2703(1).  The Act then authorizes political entities, like Creve Coeur, to collect a "video service provider fee" equal to "not more than five percent of the gross revenues from each video service provider providing video service" in the political entity. *Id.*, § 67.2689.

To limit the reach of this administrative framework, the Act makes clear that "video services" do not include "any video programming provided solely as part of and via a service that enables users to access content, information, electronic mail, or other services offered ***over the public internet.***"  *Id*., § 67.2677(14) (emphasis added).

### B.    Creve Coeur's Municipal Ordinance

Creve Coeur regulates video service providers pursuant to Article VI, Chapter 635, Section 330 of its Municipal Code (the "Ordinance").  First Amended Petition ("Pet.") ¶ 6. The Ordinance draws its relevant definitions and other provisions directly from the Act.  For example, the Ordinance contains identical definitions of "video services," "video service providers," and "video service authorization."  Section 635.330(A).  The Ordinance incorporates identical provisions requiring potential video service providers to obtain authorization from the PSC before providing services, Section 635.330(B)(1), to provide written notice to Creve Coeur before commencing video service in Creve Coeur, *id.*, and to designate certain channels for non-commercial public, educational, or government use, Section 635.330(E).

Pursuant to the Act, Creve Coeur also collects a five percent gross revenue fee from video services providers.  To comply with the Act, the Ordinance defines "video service

provider" as "[a]ny person authorized to distribute video service through a video service network pursuant to a video service authorization."  Mun. Code Section 635.330(A).  The Ordinance defines the "video service authorization" as the "permission from the Missouri Public Service Commission pursuant to Section 67.2675 to 67.2714, RSMo."  *Id.*

### C.      Hulu's Services

Hulu provides access to premium internet content in the form of streaming video throughout the nation to over 20 million subscribers, including subscribers in Creve Coeur.  Pet. ¶¶ 3, 22, 23.  Hulu's customers subscribe to a monthly plan, and access Hulu's content through internet-connected devices.  *Id*. ¶¶ 24, 27.

Through its streaming services, Hulu provides its customers access to a premium library of films and television programs.  *Id*. ¶¶ 8, 28.  In addition, Hulu produces and distributes its own original films and groundbreaking television series.  *Id*. ¶ 29.  For example, as part of its subscription service, Hulu provides access to the award-winning hit show "The Handmaid's Tale."  *Id*.

Hulu is not authorized as a "video services provider" under Section 67.2679(4) of the Act by the Missouri Public Service Commission.  *Id*. ¶ 8; Request for Judicial Notice ("RJN") Ex. A, https://www.efis.psc.mo.gov/mpsc/VideoFranchiseAuthorization.html.

### D.      The Petition

On July 19, 2018, Creve Coeur filed a putative class action petition captioned *City of Creve Coeur, Missouri, on behalf of itself and all others similarly situated, v. Netflix, Inc. and Hulu, LLC.*, Case No. 18SL-CC02819, in the Circuit Court of St. Louis County, Missouri.  On August 9, 2018, Creve Coeur filed a First Amended Petition.  On September 6, 2018, Netflix and Hulu jointly removed the state action to this Court.

In its First Amended Petition, Creve Coeur alleges that Hulu is subject to the Act. Pet. ¶¶ 1-4.  Creve Coeur asserts that Hulu has failed to provide notice of intent to provide video services and has failed to pay video service provider fees.  *Id.* ¶ 37.  Creve Coeur asserts claims for: (1) Declaratory Judgment, Injunctive Relief and an Accounting; (2) Unjust Enrichment; and (3) Unpaid Fees, Interest and Penalties.  *Id.* ¶¶ 38-51.  Each of Creve Coeur's claims is predicated on its allegation that Hulu is required to pay the video service provider fee authorized under the Act.  *Id.* ¶¶ 40, 49, 51.

Creve Coeur purports to bring this action on behalf of a putative class defined as "itself and all other Missouri subdivisions that collect video-service-provider fees, and in which Defendants have provided or continue to provide video service."  *Id.* ¶ 12.

## III.    LEGAL STANDARD

A motion to dismiss must be granted if there is a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. Proc. 12(b)(6).  This allows the court to eliminate actions "which are fatally flawed in their legal premises and deigned to fail."  *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001).  In ruling on a 12(b)(6) motion to dismiss, courts are not limited to the four corners of the complaint.  *Outdoor Cent, Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011).  Courts may properly consider materials that are part of public records, as well as items subject to judicial notice.  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## IV.    ARGUMENT

### A.    The Act Expressly Excludes Hulu's Services

The Petition fails to state any claim because the Act expressly exempts internet content providers and website owners like Hulu from its reach.  The definition of "video service" excludes "any video programming provided solely as part of and via a service that

- 5 -

enables users to access content, information, electronic mail, or other services offered over
*the public internet*."  Mo. Rev. Stat. § 67.2677(14) (emphasis added).

Hulu falls squarely within this exclusion.  Hulu offers a "service"—*i.e.*, "online
streaming of live video programming and a library of films and television programs"—that
users access "using an internet connected device."  Pet. ¶¶  8-24, 34.  This clearly falls
within the plain meaning of a "service" that "enables users to access content…over the
public internet."  Mo. Rev. Stat. § 67.2677(14); *Owner-Operator Indep. Drivers Ass'n, v.
United Van Lines, LLC*, 556 F.3d 690, 693 (8th Cir. 2009) ("[I]f the statute's language is
plain, the sole function of the courts is to enforce it according to its terms.").

Anticipating this, the Petition alleges that Hulu does not "provide access to the
public internet."  Pet. ¶ 30.  But this is not what the Act requires.  The exclusion is not
limited to entities that "provide access to the public internet."  Rather, the Act excludes
anyone that provides a "service that enables users to *access content, information, electronic
mail, or other services* offered over the public internet."  Mo. Rev. Stat. § 67.2677(14)
(emphasis added).  This extends beyond traditional internet service providers (ISP) that
provide access to the internet itself.

Courts have consistently interpreted identical language to cover internet content
providers and website owners like Hulu.  The federal CAN-SPAM statute similarly defines
"internet access service" as "a service that enables users to access content, information,
electronic mail, or other services offered over the Internet."  47 U.S.C. § 231(e)(4).  Courts
have held that this broad language includes not only traditional ISPs, but also internet
content providers and websites.  For example, in *MySpace, Inc. v. The Globe.com, Inc.*, 2007
WL 1686966, at *3 (C.D. Cal. Feb. 27, 2007), a district court analyzed whether the website
MySpace, a social media platform, constituted a "service that enables users to access content

… over the Internet."  The court easily concluded yes because the "plain meaning of the statutory language is unambiguous."  *Id.*  The language "includes traditional Internet Service Providers ('ISPs'), any email provider, and even most website owners."  *Id.*

Similarly, in *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1094 (N.D. Cal. 2007), the court held that "the language is broad enough to encompass entities such as Facebook that provide further access to content and communications between users for persons who may initially access the Internet through a conventional 'internet service provider.'"  *See also White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 373 (5th Cir. 2005) (provider of e-mail accounts is "a service that enables users to access content … over the Internet"); *Haselton v. Quicken Loans, Inc.*, 2008 WL 11344645, at *1 (W.D. Wash. Nov. 24, 2008) (company that provided "service…that enabled end-users to access blocked Internet content" is a service that "enable[d] access to Internet content").

There is no indication Missouri intended the Act apply to internet content providers like Hulu.  The intent of the Act was to encourage the proliferation of cable television services in Missouri by creating a uniform system of registration and regulation.  *See, e.g.*, "Blunt signs cable franchising bill," St. Louis Business Journal (March 22, 2007), https://www.bizjournals.com/stlouis/stories/2007/ 03/19/daily52.html (last visited Sept. 13, 2018( ("The legislation I signed today allows businesses to compete and creates competition for all companies that want to provide telecommunications and cable service.").  The Act itself clearly contemplates that only cable television-like services would be subjected to its requirements.  The Act assumes that "covered video service providers" are entities capable of carrying the emergency alert system "applicable to cable operators," Mo. Rev. Stat. § 67.2683, and video programming services that offer "channels" that can be dedicated for "noncommercial public, education, or governmental use," *id.*, 67.2703.01.  This is a far cry

from what Hulu provides.  C*f. Kentucky v. Netflix Inc.*, No. 15-Cl-01117, slip op. at 14-17 (Ky. Cir. Ct. Aug. 23, 2016).  The broad internet exclusion confirms this.

### B.      By Its Express Terms, The Fee Does Not Apply To Hulu

Even if the Act did not categorically exclude internet content providers, the fee still does not apply to Hulu.  The Act permits municipalities to collect a fee of not more than five percent of gross revenues from a "video service provider."  Mo. Rev. Stat. §§ 67.2689.  The Act limits "video service provider" to persons who distribute videos "pursuant to a video service authorization" from the PSC.  *Id.* §§ 67.2677(15) and (17).  Hulu's distribution of video content to Missouri citizens over the past ten years has not been "pursuant to a video service authorization" from the PSC and, therefore, the fee cannot apply.

Creve Coeur has incorporated these same limitations.  Creve Coeur can only collect a fee from a "video service provider," which is specifically defined under Creve Coeur's Ordinance as "[a]ny person *authorized* to distribute video service through a video service network *pursuant to a video service authorization*."  Mun. Code Section 635.330(A) (emphasis added).  The Ordinance further defines "video service authorization" as "[t]he right of a video service provider … that secures *permission from the Missouri Public Service Commission* … to offer video service to subscribers." *Id.* (emphasis added).

As these provisions make clear, the fee cannot be levied apart from the PSC authorization process.  Consistent with the limitations of the Act, the Ordinance does not impose a fee on just any video provider; it seeks to impose the fee only on video providers that have first been "authorized" by the PSC.  *Id.*  This is in line with the purpose of the Act—to regulate cable service providers.  *See supra* at 7.  In fact, a review of the providers that *have* received authorization from the PSC is informative.  *See* RJN, Ex. A.  The listed providers are almost exclusively cable service providers; none are internet content

providers.[1]  *Id*.  To date, the PSC has not required Hulu to obtain authorization and nowhere in the Petition does Creve Coeur allege that Hulu has it.  *Id*.  Because Hulu does not provide its video streaming services pursuant to PSC authorization, the fee by its terms cannot apply.

Which companies should be required to obtain authorization is up to the PSC.  The Act provides that the PSC "shall have the exclusive authority to authorize any person to construct or operate a video service network or offer video service in any area of this state."  Mo. Rev. Stat. § 67.2679(4); *id*. ("the Public Service Commission shall be considered the sole franchising authority for the state").  To the extent Creve Coeur disagrees, its issue is with the PSC and not Hulu.  There is a clear structure set up by the statute: first a "video service provider" under the statute receives authorization from the PSC, then the Act's fee can be enforced.  Creve Coeur cannot bypass the required authorization process and the exclusive authority of the PSC by simply filing suit asking the Court to impose the fee as if Hulu is currently operating under PSC authorization.

Regardless of what Creve Coeur believes the PSC should require from Hulu, what is clear is that Hulu is not operating under PSC authorization and is thus not subject to the fee.

**CONCLUSION**

For all of these reasons, Hulu respectfully requests that the Court dismiss Creve Coeur's claims against Hulu without leave to amend.

---

[1] This is likely a practical result of the internet exception, discussed *supra*.

Dated: September 13, 2018

**IRELL & MANELLA LLP**
Victor Jih (*pro hac vice* forthcoming)
Andrew J. Strabone (*pro hac vice*
forthcoming)
Moon Hee Lee (*pro hac vice*
forthcoming)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Telephone: (310) 277-1010
vjih@irell.com
astrabone@irell.com
mhlee@irell.com

**Of Counsel**

Respectfully Submitted,

**BRYAN CAVE LEIGHTON
PAISNER LLP**

*/s/ Darci F. Madden*
Darci F. Madden, MO #51463
211 N. Broadway, Suite 3600
St. Louis, MO  63124
Telephone: (314) 259-2366
Facsimile: (314) 552-8366
dfmadden@bclplaw.com

***Attorneys for Defendant Hulu, LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served by operation of the Court's CM/ECF system on all counsel of record this 13th day of September, 2018.

/s/  *Darci F. Madden*