**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

CITY OF CREVE COEUR, MISSOURI, on
behalf of itself and all others similarly situated,

                Plaintiffs,

     vs.

NETFLIX, INC. and HULU, LLC;

             Defendants.

CASE NO.  18-cv-01495-SNLJ

**CLASS ACTION**

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO REMAND TO STATE COURT**

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.     Defendants Have Not Shown by a Preponderance of the Evidence
that the Prerequisites for Removal Are Present. ........................................................ 5

       A.     Defendants speculate regarding the number of potential class
members for purposes of CAFA ............................................................. 5

       B.     Defendants rely on improper bases to calculate the amount in
controversy, and their conclusory allegations fail to meet their burden. ................ 6

II.    The Case Should Be Remanded Pursuant to the TIA or
Principles of Federalism and Comity ...................................................................... 8

       A.     Under the TIA, the Court Lacks Jurisdiction to
Hear this Case. ................................................................................. 10

       B.     Even if the TIA does not apply, the case should still be remanded
on the basis of comity. ....................................................................... 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Elec. Co-op., Inc. v. Town of Dell*,
No. 3:12CV00110–JMM, 2012 WL 2789708 (E.D. Ark. Jul.9, 2012) ..................................14

*Burris v. City of Little Rock*,
941 F.2d 717 (8th Cir. 1991) ..................................................................1, 9, 10, 12

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)..................................................................................4

*Caufield v. EMC Mortg. Corp.*,
803 F. Supp. 2d 519 (S.D. W. Va. 2011) ...............................................................6

*Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*,
561 F.3d 904 (8th Cir. 2009) ..........................................................................4

*City of Chattanooga v. BellSouth Telecomms.*,
1. F. Supp. 2d 809 (E.D. Tenn. 1998)..................................................................11

*City of Maryland Heights v. TracFone Wireless, Inc.*,
2013 WL 791866 (E.D. Mo. Mar. 4, 2013) .........................................................2, 14

*City of O'Fallon, Mo. v. CenturyLink, Inc.*,
930 F. Supp. 2d 1035 (E.D. Mo. 2013)..............................................................5, 6, 8

*Dahl v. R.J. Reynolds Tobacco Co.*,
478 F.3d 965 (8th Cir. 2007) ..........................................................................4

*Diginet, Inc. v. W. Union ATS, Inc.*,
845 F. Supp. 1237 (N.D. Ill. 1994) ..................................................................11

*Diversified Ingredients, Inc. v. Testa*,
2016 WL 2932160 (E.D. Mo. May 19, 2016),
*aff'd*, 846 F.3d 994 (8th Cir. 2017) (White, J.)..............................................2, 10, 12

*Dows v. City of Chicago*,
78 U.S. (11 Wall.) 108 (1870) .....................................................................1, 8

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
454 U.S. 100 (1981)................................................................................8, 9, 12

*Freebird, Inc. v. Merit Energy Co.*,
597 F. Supp. 2d 1245 (D. Kan. 2009).................................................................5

*Great Lakes Dredge & Dock Co. v. Huffman*,
    319 U.S. 293 (1943)........................................................................................13

*Indep. Coin Payphone Ass'n, Inc. v. City of Chicago*,
    863 F. Supp. 744 (N.D. Ill. 1994) .....................................................................11

*Jefferson Cty., Ala. v. Acker*,
    527 U.S. 423 (1999)........................................................................................10

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010)........................................................................1, 9, 13, 14

*Miller v. City of Greenville, Miss.*,
    138 F.2d 712 (8th Cir. 1943) ...........................................................................15

*Nw. Ark. Home Builders Ass'n, Inc. v. City of Rogers*,
    No. CIV. 07-5148, 2008 WL 615927 (W.D. Ark. Mar. 3, 2008)......................2, 11

*Petty v. Missouri*,
    No. 4:17 CV 2615 JMB, 2018 WL 2065715 (E.D. Mo. May 3, 2018) ................12

*Robinson Protective Alarm Co. v. City of Philadelphia*,
    581 F.2d 371 (3d Cir. 1978).......................................................................10, 11

*Rosewell v. LaSalle Nat. Bank*,
    450 U.S. 503 (1981)......................................................................................1, 10

*Waters v. Ferrara Candy Co.*,
    873 F.3d 633 (8th Cir. 2017) .............................................................................4

*Wexler v. United Air Lines, Inc.*,
    496 F. Supp. 2d 150 (D.D.C. 2007) ...................................................................6

*Wright v. McClain*,
    835 F.2d 143 (6th Cir. 1987) ........................................................................9, 10

**Statutes**

28 U.S.C. § 1332(d) ................................................................................................5, 7

28 U.S.C. § 1341 ....................................................................................................9, 10

Mo. Rev. Stat. § 67.2677(6)....................................................................................3, 7

Mo. Rev. Stat. § 67.2679.1 .......................................................................................12

Mo. Rev. Stat. § 67.2689 ........................................................................................3, 7

**Other Authorities**

14A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 3708 (4th ed.)....................................7

iv

For nearly 150 years, the Supreme Court has repeatedly and consistently held that disputes concerning local jurisdictions collecting revenue belong in state court. *See, e.g.*, *Dows v. Chicago,* 78 U.S. (11 Wall.) 108, 110 (1870); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421–24 (2010). "'An examination of [our] decisions,' [the] Court wrote more than a century ago, 'shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [us] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired.'" *Levin*, 560 U.S. at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City,* 213 U.S. 276, 282 (1909)).

Founded on the basis of comity and proper respect for state sovereignty, the doctrine was even partially codified in the Tax Injunction Act of 1937 ("TIA"). The "principal motivating factor behind the legislation" was "the imperative need of a State to administer its own fiscal operations." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981) (internal quotations omitted). The TIA thus strips federal courts of jurisdiction in declaratory judgment actions involving the collection of taxes. *Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991) ("The prohibition extends to declaratory judgment actions….").

This declaratory judgment action seeks to require Defendants[1] to pay a small percentage of their gross receipts to certain Missouri cities and counties in which they do business. Make no mistake, Defendants' removal notice contains many deficiencies that should lead to remand, but the local nature of this dispute is an inescapable obstacle. Creve Coeur alleges that Missouri's Video Services Providers Act requires Defendants to pay these gross receipts fees; Defendants argue it does not. That dispute squarely implicates Missouri's state and local fiscal operations, meaning it should be decided by Missouri's state courts.

---

[1] "Defendants" refers to both defendants in the case.

1

With respect to the TIA, Defendants will likely argue that these "fees" do not qualify as "taxes." But "a broad construction of 'tax' is necessary to honor Congress's goals in promulgating the TIA, that of 'preventing federally-based delays in the collection of public revenues by state and local governments.'" *Nw. Ark. Home Builders Ass'n, Inc. v. City of Rogers*, No. CIV. 07-5148, 2008 WL 615927, at *3 (W.D. Ark. Mar. 3, 2008) (quoting *Henderson v. Stalder*, 407 F.3d 351, 356 (5th Cir. 2005)). To carry out Congress's intention, federal courts have not hesitated in deeming gross receipts "fees" to be a "tax under state law" falling within the TIA. *See* cases discussed *infra* at 11.

Moreover, even if the TIA does not apply, the court should still remand on the basis of comity, which remains broader than the TIA. Just five years ago, this District Court remanded another municipal class action that similarly involved the collection of gross receipts fees, holding that in "seeking removal of this action, Defendant invites 'federal-court review of commercial matters over which [Missouri and Missouri municipalities] enjoy wide regulatory latitude.'" *City of Maryland Heights v. TracFone Wireless, Inc.*, 2013 WL 791866, at *3 (E.D. Mo. Mar. 4, 2013) (quoting *Levin*, 560 U.S. at 431); *see also Diversified Ingredients, Inc. v. Testa*, 2016 WL 2932160, at *3–4 (E.D. Mo. May 19, 2016), *aff'd*, 846 F.3d 994 (8th Cir. 2017) (White, J.) (relying on comity doctrine and TIA when remanding a case to state court). Creve Coeur respectfully asks the Court to reach the same decision here and to remand the case to state court.

## FACTUAL AND PROCEDURAL BACKGROUND

Netflix and Hulu provide video programming to customers in Missouri. Doc. 5, Am. Pet. ¶¶ 2-3. But unlike other providers of video programming, Netflix and Hulu have not been paying video-service-provider fees. *Id.* These fees are authorized by Missouri's Video Services Providers Act, which allows political subdivisions in Missouri to collect up to 5% of video-

2

service-providers' gross receipts and requires providers to register before providing service in
Missouri. Mo. Rev. Stat. § 67.2689. Defendants' lack of payment has been depriving Missouri
municipalities of much-needed revenue. Doc. 5, Am. Pet. ¶ 2.

Creve Coeur alleges that this Missouri law (along with local ordinances) requires
Defendants to pay these fees, and so it brought this action for declaratory and other relief in St.
Louis County Circuit Court. In doing so, Creve Coeur seeks to represent a class of "all Missouri
political subdivisions that collect video-service-provider fees, and in which Defendants have
provided or continue to provide video service." *Id.* at ¶ 11. Creve Coeur alleges that Missouri's
Video Services Providers Act "applies to Defendants just as it applies to other video-service
providers." *Id.* at ¶ 3. The key question in the case is the interpretation of this Missouri law.

The Act defines "video service" as "the provision of video programming provided
through wireline facilities located at least in part in the public right-of-way without regard to
delivery technology, including internet protocol technology whether provided as part of a tier, on
demand, or a per-channel basis." Mo. Rev. Stat. § 67.2677(14). Creve Coeur alleges that
Defendants routinely use wireline facilities located in the public right-of-way to deliver their
services. Doc. 6, Am. Pet. ¶¶ 3, 23-36. Using information found on Defendants' own websites,
the petition details a number of ways in which Defendants rely on internet wireline facilities to
stream video programming. *Id.*; *see also* Docs. 5-1 to 5-4, Exs. A-D to Am. Pet.

Defendants jointly removed the case to this Court on September 6, 2018. Doc. 1.
Defendants claim that the Court has jurisdiction under the Class Action Fairness Act ("CAFA").
Doc. 1, Rem. Notice ¶ 4.

On September 13, Defendants moved to dismiss. The motions focus solely on the
argument that the Missouri Act does not apply to Defendants. Docs. 10, 13. They point to a

3

governor's signing statement as supposed evidence of legislative history (Doc. 10 at 3); argue (with little support) that they fall within an exception to the Act (Doc. 10 at 8-9; Doc. 13 at 5-6); and claim that they cannot comply with some requirements found in other places of the Act for local public programming and emergency alerts (Doc. 10 at 9-10; Doc. 13 at 7). They even argue that the entire matter rests with the Missouri Public Service Commission. Doc. 10 at 9; Doc. 13 at 9. Those disputes should be resolved by Missouri's state courts.

## ARGUMENT

Being the parties invoking federal jurisdiction, Defendants bear the burden of proving that removal was proper. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). Courts strictly construe removal statutes, and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009); *see also Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) ("Federal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal.").

"[T]he plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And when a defendant invokes CAFA diversity jurisdiction, as Netflix and Hulu do here, the defendant must show by a preponderance of the evidence that all the prerequisites of the statute have been met. *See Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) ("where the plaintiff contests the defendant's amount-in-controversy allegation," removal under CAFA is only proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold").

4

Defendants have failed to meet their burden for two principal reasons: (1) Defendants have not unambiguously established that removal was proper, and (2) the TIA and principles of comity dictate that this matter should be decided by Missouri's state courts.

## I.   Defendants Have Not Shown by a Preponderance of the Evidence that the Prerequisites for Removal Are Present.

### A.   Defendants speculate regarding the number of potential class members for purposes of CAFA.

According to Defendants' removal petition, CAFA is the sole basis for this Court supposedly possessing jurisdiction. For jurisdiction to be proper under CAFA, the number of class members must be at least 100. 28 U.S.C. § 1332(d)(5). Because Creve Coeur does not allege the total number of class members, Defendants must set forth facts establishing by a preponderance of the evidence that there are 100 or more class members. *See, e.g.*, *City of O'Fallon, Mo. v. CenturyLink, Inc.*, 930 F. Supp. 2d 1035, 1040 (E.D. Mo. 2013); *Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1249 (D. Kan. 2009) ("[T]he removing party must establish jurisdiction in the removing document, therefore, it is the Notice of Removal and supporting affidavit that must meet this test."). They have not done so.

The alleged class consists of "Missouri political subdivisions that collect video-service-provider fees, and in which Defendants have provided or continue to provide video service." Doc. 5, Am. Pet. ¶ 12. Defendants claim that there are at least 700 political subdivisions in Missouri, and that over 400 of them "impose video-service-provider fees." Doc. 1 at ¶ 14. Defendants do not support this assertion. They cite to the Missouri Public Service Commission's website, but the link provided does not even work, much less provide a list of municipalities collecting a video-service-provider fee.

5

Defendants then claim that they have "subscribers in more than 100 of the aforementioned municipalities." *Id.* at ¶ 15. But in the preceding paragraph, Defendants had just discussed two sets of political subdivisions, so it is unclear whether "aforementioned" refers to the 700 political subdivisions in Missouri or the 400 that supposedly "impose video-service-provider fees." Either way, Defendants provide zero support for this assertion. They fail to provide a list of class members, corporate records showing subscribers in Missouri political subdivisions, or any other supporting documents.

Just throwing out numbers without support is clearly insufficient. *See, e.g., Caufield v. EMC Mortg. Corp.*, 803 F. Supp. 2d 519, 526-27 (S.D. W. Va. 2011) ("There is no evidence in the record from which the court can determine whether the proposed class consists of ten members, a hundred members, or several hundred members."); *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 155 (D.D.C. 2007) ("Because the size of the class is very unclear [for purposes of CAFA], the issue should be resolved in favor of remand."). As stated in another proposed class action involving Missouri municipalities,

> All [Defendants show] are the municipalities or cities in which the defendants do business. There is no factual support or demonstrative evidence supporting the defendants' sheer speculation that there are at least 100 class members based upon the complaint's definition of the class. Defendants have failed to identify via this map, or otherwise, 100 cities which have an ordinance that imposes a business or occupational tax on telephone services as provided by these defendants.

*City of O'Fallon*, 930 F. Supp. 2d at 1040. Thus, neither Defendant has alleged facts establishing that there are over 100 class members.

### B. Defendants rely on improper bases to calculate the amount in controversy, and their conclusory allegations fail to meet their burden.

When estimating the amount in controversy under CAFA, Defendants also rely on improper criteria. For instance, Defendants cite to the general rule that the value of prospective

relief may be included when making these calculations, Doc. 1 at ¶ 29, but that general rule does

not apply to tax-related cases: "According to the cases, the amount in controversy is the cost of

paying the tax at the time of the litigation, not the capitalized value of the tax or the

consequences of not paying the tax." 14A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. §

3708 (4th ed.). This is because it cannot be assumed that a municipality will continue to enforce

the tax; also, the tax could be modified by legislation, or the company could cease to do business

in the locale. *See id.*

As for the actual numbers that Defendants provide, Defendants again rely on conclusory,

speculative allegations. To meet CAFA's requirements, Defendants must show by a

preponderance of the evidence that potential damages exceed $5 million. 28 U.S.C. § 1332(d).

Netflix states that it "has earned well over $170,000,000 in gross revenues from subscribers

within the jurisdictions of the putative class members within the past 5 years," and Hulu likewise

states that it "has earned over $90,000,000 in gross revenues." Doc. 1 at ¶ 27. Yet not a shred of

evidence supports these assertions. And though these are supposedly numbers for "gross

revenues," without documentation it is unknown whether all of this revenue should be properly

considered "gross revenues" under the Video Services Provider Act. *See* Mo. Rev. Stat. §

67.2677(6) (defining "gross revenues" and excluding certain categories of revenue).

Moreover, Defendants do not even attempt to do the math showing that they satisfy the

jurisdictional amount. Under the Act, political subdivisions may collect a fee of "not more than

five percent of gross revenues." *Id.* § 67.2689. Defendants acknowledge that some cities collect

less than 5%, *see* Doc. 1 at n.1, but they do not acknowledge the import of this: without

providing a list of putative class members along with the fee percentages they charge, it remains

unknown how much is at issue in this case. *See City of O'Fallon*, 930 F. Supp. 2d at 1043-44 (using the wrong measure of revenue is fatal to removal).

Lack of support thus pervades the entire removal notice, as neither Defendant provides records or any further bases for the allegations. "Speculation is not sufficient to meet the defendants' burden under the preponderance of evidence standard," *City of O'Fallon*, 930 F. Supp. 2d at 1044, so Defendants have failed to meet their burden.

## II.    The Case Should Be Remanded Pursuant to the TIA or Principles of Federalism and Comity.

Even if the Court finds that Defendants otherwise established the prerequisites of CAFA diversity jurisdiction, the case should still be remanded based on the TIA or comity. Since at least 1870, the Supreme Court has recognized that cases involving local systems of raising revenue should be decided by state courts. *See Dows v. City of Chicago*, 78 U.S. (11 Wall.) 108, 110, (1870) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."). The Supreme Court has consistently reaffirmed the doctrine, and this district court has played an important role in its continued vitality.

In 1981, the Supreme Court decided *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, a case involving St. Louis County property taxes. 454 U.S. 100, 108 (1981). After this District held that comity precluded it from hearing the case (and the Eighth Circuit agreed), the Supreme Court explained why the doctrine still carried such "peculiar force." *Id.* There is a "delicate balance between the federal authority and state governments," so "concomitant respect … should be accorded state tax laws in federal court." *Id.* Further, "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal

courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that

such relief should be denied *in every case* where the asserted federal right may be preserved

without it." *Id.* (emphasis added) (internal quotations omitted)). Thus, "the reasons supporting

federal noninterference [with state taxation] are just as compelling today as they were in 1937."

*Id.* at 112-13 (quoting *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 527 (1981)).

More recently, the Supreme Court reaffirmed this foundational principle, stating that the

"doctrine reflects a proper respect for state functions, a recognition of the fact that the entire

country is made up of a Union of separate state governments, and a continuance of the belief that

the National Government will fare best if the States and their institutions are left free to perform

their separate functions in separate ways." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421

(2010) (internal quotations and citations omitted). Likewise, "[a]n examination of [our]

decisions" shows "a proper reluctance to interfere by prevention with the fiscal operations of the

state governments," and courts should "refrain from so doing in all cases where the Federal

rights of the persons could otherwise be preserved unimpaired." *Id.* at 422.

The doctrine is so foundational that Congress expressed approval of it by enacting the

TIA, which prohibits federal district courts from "enjoin[ing]" or "restrain[ing]" state tax matters

so long as state courts offer a "plain, speedy and efficient remedy." 28 U.S.C. § 1341. It "is an

expression of congressional purpose to promote comity and to afford states the broadest

independence, consistent with the federal constitution, in the administration of their affairs,

particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987). "The

prohibition extends to declaratory judgment actions as well as to suits for injunctive relief."

*Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991).

Whether on the basis of the TIA or comity, the result is the same: the case is a matter of local fiscal affairs, and it should be remanded to St. Louis County Circuit Court.

### A.  Under the TIA, the Court Lacks Jurisdiction to Hear this Case.

The TIA is a limitation on federal courts' jurisdiction. *Diversified Ingredients, Inc. v. Testa*, 846 F.3d 994, 996 (8th Cir. 2017) ("Though the explicit reference to jurisdiction was removed in the 1948 United States Code revisions, the Supreme Court has continued to refer to the TIA as limiting subject matter jurisdiction."). The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Rosewell*, 450 U.S. at 522 (internal quotations omitted). The TIA recognizes the "broadest independence" that states have "in the administration of their affairs, particularly revenue raising." *Wright*, 835 F.2d at 144. Thus, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The name is a slight misnomer, as, again, the TIA extends not just to injunctive actions but also to declaratory judgment actions such as the one brought here.[2] *Burris*, 941 F.2d at 720. And it is of no import that Missouri law considers these assessments to be "fees" instead of taxes because "the label given an assessment by state law is not dispositive of whether the assessment is a 'tax under state law.' Rather, the definition of the term 'tax' is a question of federal law, and the issue here is whether the assessment in question is a tax within the meaning of that term as employed by Congress in the Tax Injunction Act." *Wright*, 835 F.2d at 144; *accord Robinson*

---

[2] Defendants cite to *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 435 (1999) to support the statement in their removal papers (Doc. 1 at 1) that the TIA "has no application here." Unlike here, however, *Jefferson County*, involved a collection suit against two federal judges, which gave rise to federal question jurisdiction under the federal officer removal statute, and it did not involve a declaratory judgment or injunctive action.

*Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 374 (3d Cir. 1978) (reaching the same result). In that regard, "a broad construction of 'tax' is necessary to honor Congress's goals in promulgating the TIA, that of 'preventing federally-based delays in the collection of public revenues by state and local governments.'" *Nw. Ark. Home Builders Ass'n, Inc. v. City of Rogers*, No. CIV. 07-5148, 2008 WL 615927, at *3 (W.D. Ark. Mar. 3, 2008) (quoting *Henderson v. Stalder*, 407 F.3d 351, 356 (5th Cir. 2005)).

Many federal courts have deemed similar municipal gross receipts "fees" to be a "tax under state law," and thus falling within the TIA. *See, e.g.*, *Robinson*, 581 F.2d at 374 (gross receipts fee on company seeking to use underground wires held to be a tax under the TIA); *City of Chattanooga v. BellSouth Telecomms.*, 1 F. Supp. 2d 809, 814 (E.D. Tenn. 1998) (franchise fee levied on telecommunications provider a tax under the TIA); *Indep. Coin Payphone Ass'n, Inc. v. City of Chicago*, 863 F. Supp. 744, 755 (N.D. Ill. 1994) (collecting cases and holding that gross receipts franchise fee was a tax for TIA); *see also Nw. Ark. Home Builders Ass'n, Inc.*, 2008 WL 615927, at *3 (fees charged for water and sewer considered a tax for TIA). Even franchise fees on cable companies (Defendants' competitors) have been deemed to be "taxes" for purposes of the TIA. *See Diginet, Inc. v. W. Union ATS, Inc.*, 845 F. Supp. 1237, 1240 (N.D. Ill. 1994). This is because fees calculated based on a company's gross receipts are meant to provide a city with revenue—not simply to pay for regulatory costs—which means they should be considered taxes for purposes of the TIA. *See Indep. Coin Payphone Ass'n*, 863 F. Supp. at 755 (discussing the distinction).

The second paragraph of Creve Coeur's petition makes clear that these fees provide the cities with revenue: "Defendants have not been paying video-service-provider fees, which deprives Missouri municipalities of much-needed revenue." Doc. 5. Moreover, the purpose

11

statement of the Missouri Act enabling these fees states that the legislature intended to "provide new revenues to political subdivisions" and to provide "a more predictable source of funding" for Missouri municipalities. Mo. Rev. Stat. § 67.2679.1. Thus, even though the video-service-provider fee is labeled a "fee" under state and municipal law, it is a "tax" under the TIA.

The final requirement of the TIA is that the state courts offer "a plain, speedy and efficient remedy." This is not a steep bar, as it only requires "a full hearing and judicial determination"; so "long as the taxpayer's federal rights receive full consideration, the remedy is adequate." *Burris*, 941 F.2d at 720. A Missouri state court can of course fully hear all matters raised under state law and federal law, and litigants have access to the full range of appeals. As this Court stated recently in a case involving a tax under Ohio law, the "state review procedure provides [Defendants] ample opportunity to appeal," so "there is a plain, adequate, complete, speedy and efficient remedy" and "the TIA precludes [the] action in this Court." *Diversified Ingredients, Inc.*, 2016 WL 2932160, at *3–4; *see also Petty v. Missouri*, No. 4:17 CV 2615 JMB, 2018 WL 2065715, at *3 (E.D. Mo. May 3, 2018) (finding "available remedies in the state courts of Missouri" to be adequate under the TIA).

The same is true here, so the Court lacks jurisdiction here.

### B. Even if the TIA does not apply, the case should still be remanded on the basis of comity.

While the comity doctrine predates the TIA, the TIA did nothing to curb its common-law predecessor. Instead, the comity doctrine remains broader than the TIA. As the Court said in *Fair Assessment*, "Neither the legislative history of the [TIA] nor that of its precursor, … suggests that Congress intended that federal-court deference in state tax matters be limited to the actions enumerated in [the TIA's] sections … Thus, the principle of comity which predated the Act was not restricted by its passage." 454 U.S. at 110. Indeed, after some courts had begun to take a

12

narrower view of the comity doctrine, the Supreme Court confirmed the point in *Levin*, stating

that "our precedents affirm that the comity doctrine is more embracive than the TIA…." *Levin*,

560 U.S. at 424. It thus remains the case that because of the "scrupulous regard for the rightful

independence of state governments," federal courts should not decide cases involving a state's

"fiscal operations." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943); *see*

*also Levin*, 560 U.S. at 421 (quoting this passage from *Great Lakes*).

Only five years ago, this District Court relied on the doctrine when it remanded another

proposed class action brought by Missouri municipalities seeking to collect unpaid fees:

> The considerations relevant to application of the comity principle and identified
> in *Levin* also are present here. *Id.* First, in seeking removal of this action,
> Defendant invites "federal-court review of commercial matters over which
> [Missouri and Missouri municipalities] enjoy wide regulatory
> latitude." *Id.* Second, certain defenses raised here involve application of Missouri
> law and the Missouri Constitution. Without question the state court is more
> familiar with Missouri's tax laws and the intent of the Missouri legislature. *See*
> *id.; see also Rainbow Trout Farms, Inc. v. Brownback,* No. 11–1290–RDR, 2012
> WL 3879890, at *5 (D. Kan. Sept.6, 2012). Although Defendant raises federal
> constitutional defenses as well, these do not involve "any fundamental right or
> classification that attracts heightened judicial scrutiny" so as to justify the
> exercise of federal jurisdiction. *Levin*, 130 S. Ct. at 2336 (noting that equal
> protection challenges to classifications not warranting higher scrutiny will not
> mandate a federal forum). Third, if the tax ordinances at issue here are declared
> unconstitutional, Missouri courts are "better positioned than this Court to correct
> any violation because they are more familiar with state legislative preferences and
> because the TIA does not constrain their remedial options." *Id.* at 2335 (holding
> that because the federal court is prohibited from enjoining tax collection under
> state law and cannot reshape the relevant provisions of a state or municipal tax
> code, the state court is better positioned to provide an adequate remedy if it finds
> that the state's taxation scheme is unconstitutional); *see also Associated Elec. Co-*
> *op., Inc. v. Town of Dell,* No. 3:12CV00110–JMM, 2012 WL 2789708, at * 1
> (E.D.Ark. Jul.9, 2012) (same); *Normand v. Cox Commc'ns, LLC,* 848 F.Supp.2d
> 619, 625 (E.D.La.2012) (applying the comity principles set forth in *Levin* to the
> situation where a municipality instituted suit to obtain a declaration that the local
> tax applied to a particular business).

13

*City of Maryland Heights*, 2013 WL 791866, at *3.

Likewise, Defendants are again inviting a federal court to review state "commercial matters" over which Missouri municipalities and courts enjoy great latitude. This case revolves around the reach of Missouri's Video Services Providers Act. Defendants' motions to dismiss only heighten this point—their arguments for dismissal focus exclusively on the applicability of that Missouri statute, and no federal defense is raised. Both Defendants argue (with little support) that they need not pay this fee to Missouri's municipalities because Netflix and Hulu fall within an exception to the Act. Doc. 10 at 8-9; Doc. 13 at 5-6. And while they could surely comply with the Act's fee requirements if instructed to do so, they claim they cannot comply with other requirements found in other places of the Act for local public programming and emergency alerts. Doc. 10 at 9-10; Doc. 13 at 7. As supposed evidence of legislative intent, they point to a governor's signing statement, (Doc. 10 at 3), and they even argue that the matter should instead be resolved by the Missouri Public Service Commission because it "is up to the PSC" to decide "[w]hich companies should be required to obtain authorization." Doc. 13 at 9; *see also* Doc. 10 at 9.

As stated in *City of Maryland Heights*, Missouri's state courts are better positioned to assess these issues of state fiscal law since they are "more familiar with Missouri's tax laws and the intent of the Missouri legislature." And for the same reasons, they are no doubt better positioned to determine the role of Missouri's Public Service Commission. Also, to the extent part of Defendants' services ultimately fall within the exclusion to the Act raised by Defendants, or to the extent it is determined that Defendants must pay fees but need not comply with certain other requirements such as emergency alerts, Missouri's state courts are better positioned to re-shape the Act in that fashion. *See Levin*, 560 U.S. at 429; *accord Associated Elec. Co-op., Inc. v.*

14

*Town of Dell*, No. 3:12CV00110-JMM, 2012 WL 2789708, at *1 (E.D. Ark. July 9, 2012)

(reaching same result).

Thus, as the Eighth Circuit put it long ago, "the nature of the dispute presents an instance of peculiar clarity where the federal court must, in the exercise of judicial discretion, refuse to take cognizance of the controversy." *Miller v. City of Greenville, Miss.*, 138 F.2d 712, 719 (8th Cir. 1943). The Court should decline to embroil itself in the fiscal affairs of Missouri municipalities, and the case should be remanded.

## CONCLUSION

For the foregoing reasons, the District Court should remand this action to the Circuit Court of St. Louis County due to its lack of subject-matter jurisdiction. In the alternative, the District Court should decline to exercise jurisdiction under principles of federalism and comity.

Dated: October 4, 2018              /s/      *Garrett R. Broshuis*

**KOREIN TILLERY, LLC**
GARRETT R. BROSHUIS
505 N. 7th Street, Suite 3600
St. Louis, MO  63101
gbroshuis@koreintillery.com

John F. Mulligan, Jr., #34431
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 725-1135
Fax. (314) 727-9071

Howard Paperner, P.C. #23488
9322 Manchester Road
St. Louis, MO  63119
Tel. (314) 961-0097
Fax. (314) 961-0667

Carl J. Lumley, #32869
Curtis, Heinz, Garrett & O'Keefe, P.C.
130 S. Bemiston, Ste. 200
Clayton, MO 63105
Tel. (314) 725-8788
Fax. (314) 725-8789

Elkin L. Kistner, #35287
Bick & Kistner PC
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 727-0777
Fax. (314) 727-9071

*Attorneys for Plaintiffs, individually and on
behalf of all those similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ Garrett R. Broshuis