**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CREVE COEUR, MISSOURI, on behalf of itself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:18-cv-01495-SNLJ |
| NETFLIX, INC., and HULU, LLC, | ) ) ) |
| Defendants. | ) |

**<u>DEFENDANT NETFLIX, INC.'S OPPOSITION TO PLAINTIFF CITY OF CREVE COEUR'S MOTION TO REMAND</u>**

I.      INTRODUCTION

This case is properly before this Court.  With no prior notice, let alone any administrative process or audit, Plaintiff filed this class action against Defendants claiming failure to pay "video service provider fees."  Defendants removed this case to this Court pursuant to the Class Action Fairness Act ("CAFA"), which was expressly intended to expand federal jurisdiction over class actions involving 100 or more putative class members and more than $5 million in controversy.  In moving to remand, Plaintiff does not argue that Defendants do not meet CAFA's jurisdictional requirements.  Instead, and directly counter to prevailing law, Plaintiff argues Defendants did not provide sufficient evidence of their claims in their Joint Notice of Removal.  But the law is clear that a notice of removal need only meet the pleading standard under 28 U.S.C. § 1446(a), and does not require supporting evidence.  Only now that Plaintiff has challenged the allegations in the Joint Notice of Removal must Defendants establish the allegations therein based on a preponderance of evidence standard.  The declarations supporting Defendants' Opposition to Plaintiff Creve Coeur's Motion To Remand not only meet, but well exceed, that standard.  Accordingly, Plaintiff's arguments against CAFA jurisdiction are meritless.

Neither is there any merit to Plaintiff's assertion that even if jurisdiction is proper under CAFA, the case should nonetheless be remanded because the Tax Injunction Act of 1937 (the "TIA") "strips federal courts of jurisdiction in declaratory judgment actions involving collection of taxes." Pl.'s Mem. Supp. Mot. to Remand at 1.  Once again, Plaintiff misstates the applicable legal standard.  The TIA was "not designed to prevent taxpayers from defending government collection suits," *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 424 (1999), which is precisely what Plaintiff has brought here.  The TIA simply does not apply.

1

Finally, despite Plaintiff's claim otherwise, there is no principle of comity that requires remand in this case. In so arguing, Plaintiff states that the comity doctrine requires that "federal courts should not decide cases involving a state's 'fiscal operations,'" or those that involve review of state "commercial matters" generally. Pl.'s Mem. Supp. Mot. to Remand at 18. Plaintiff has made up this standard, the logical extension of which is that comity would bar *all* suits involving *all* state tax statutes, out of whole cloth. Although "more embracive" than the TIA, comity does "*not* stand for the proposition that a federal court should not hear any action involving state tax law." *Buchanan County v. Equitable Production Co.*, 773 F. Supp. 2d 638, 640 (W.D. Va. 2011) (emphasis added). Instead, comity applies only in cases where broad taxpayer challenges to state tax statutes (that would hinder the revenue raising power of the state taxing system as a whole) outweigh federal district courts' duty to adjudicate cases properly before them. *See Levin v. Commerce Energy, Inc.*, 560 U.S 413, 431-32 (2010). Unlike every case cited by Plaintiff, here Netflix is not advancing a broad challenge to the state statutes or the city ordinances at issue. Indeed, Netflix is not challenging the state statutes or city ordinances at all. Netflix is simply defending itself against Plaintiff's unilateral action in filing this lawsuit by asking this Court to adjudicate a simple and narrow question of statutory construction as applied to a discrete set of facts. Comity therefore does not apply.

Because jurisdiction under CAFA is proper and Plaintiff cannot show federal jurisdiction is barred by the TIA or comity, Plaintiff's Motion to Remand should be denied.

## II. BACKGROUND

Plaintiff commenced this case in the Circuit Court of St. Louis County, Missouri on July 19, 2018. Plaintiff alleges that pursuant to the 2007 Video Services Providers Act, Mo. Rev. Stat. § 67.2675, et seq. (the "Act"), Creve Coeur's ordinances, Creve Coeur, Mo. Code, §

635.330, et seq. (the "Ordinances"), and the ordinances of potential putative class members, Defendants Netflix and Hulu (collectively "Defendants") provide video services, and, as such, are required to pay the video service provider fees authorized under the Act. Pl.'s 1st Am. Pet. at ¶¶ 1-4. Based on these allegations, Plaintiff, on its own behalf and on behalf of a potential putative class of other municipalities, has requested, among other things, declaratory and injunctive relief, and unpaid fees, interest, and penalties. Pl.'s 1st Am. Pet. at ¶¶ 38-51.

Defendants timely removed their case to this Court on September 6, 2018. Defendants' Joint Notice of Removal properly alleged all requirements to establish jurisdiction and removal. Defendants each also timely filed Motions to Dismiss on September 13, 2018. Plaintiff filed its Motion to Remand on October 4, 2018.

### III.   PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED

**A.   Defendants Have Established Jurisdiction Under CAFA**

Under CAFA, district courts have original jurisdiction over any civil action in which minimal diversity exists, the class exceeds 100 members, and the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiff does not (and cannot) dispute that the diversity requirement is satisfied here. Instead, Plaintiff's Motion to Remand addresses only the last two of these requirements. Even then Plaintiff does not assert that the class size is, in fact, less than 100 members or that the amount in controversy is less than $5,000,000, only that Defendants have not provided evidence that they meet such requirements.

Plaintiff's argument ignores entirely the Supreme Court's holding in *Dart Cherokee Basin Operating Co., LLC v. Owens*, in which the Court held that a notice of removal only needs to contain "a short and plain statement of the grounds for removal," reversing longstanding Tenth Circuit authority that required the evidentiary showing Plaintiff argues is missing here.

3

135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)).  The Supreme Court held that the pleading standard for removal is consistent with the pleading requirement set forth in Fed. R. Civ. P. 8(a).  *See id*. at 553.  *All* of the cases Plaintiff cites to the contrary pre-date *Dart Cherokee*.

Defendants thus needed only to plausibly allege facts supporting removal jurisdiction, *see id.* at 554, which they more than adequately did.  Now that Plaintiff has challenged those allegations, the burden is on Defendants to submit evidence to demonstrate these elements by a preponderance of the evidence, *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013), which is the lowest standard of proof.  *See United States v. Sparkman*, 500 F.3d 678, 685 (8th Cir. 2007).  And as set forth herein, the evidence submitted is more than sufficient for Defendants to meet their burden to establish jurisdiction under CAFA.[1]

Applying the correct legal standard, looking at the evidence submitted by the Defendants, and acknowledging the lack of any evidence provided by the Plaintiff, this Court has original jurisdiction under CAFA.  And it is not a close call.

### 1. There Are More Than 100 Putative Class Members

Plaintiff asserts that Defendants' Joint Notice of Removal "fail[ed] to provide a list of class members, corporate records showing subscribers in Missouri political subdivisions, or any other supporting documents."  Pl.'s Mem. Supp. Mot. to Remand at 6.  Defendants were not (and are not) required to identify class members or subscribers, and Plaintiff has not cited a single case imposing any such standard.  To the contrary, the Eighth Circuit has ruled that removal

---

[1] Plaintiff also incorrectly attempts to apply a presumption against removal to CAFA-removed cases.  Pl.'s Mem. Supp. Mot. to Remand at 4.  But, again, Plaintiff's argument is entirely contrary to Supreme Court precedent.  As explained in *Dart*, "[i]t suffices to point out that *no antiremoval presumption attends cases invoking CAFA*, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart*, 135 S. Ct. at 554 (quotations omitted) (emphasis added).

involves "a pleading requirement, not a demand for proof. Discovery and trial come later." *See Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012) (quotations omitted).

Here, the alleged class consists of "Missouri political subdivisions that collect video-service-provider fees, and in which Defendants have provided or continue to provide video service." Pl.'s Mem. Supp. Mot. to Remand at 5; Pl.'s 1st Am. Pet. at ¶ 12. Defendants alleged in their Joint Notice of Removal that Missouri has more than 700 subdivisions and that based upon a search of the Missouri Public Service Commission's (the "MPSC") website, more than 400 of those subdivisions impose a video service provider fee. Defs.' Joint Not. of Removal at ¶ 14. The Defendants then specifically alleged that they provided services in more than 100 of the political subdivisions that impose the video service provider fee at issue in this lawsuit. *Id*. at ¶¶ 14-15. Defendants' Joint Notice of Removal easily satisfied the pleading rule.

Despite these well-founded allegations, Plaintiff claims in its Motion to Remand that Defendants cannot "just throw numbers out there," Pl.'s Mem. Supp. Mot. to Remand at 6, but the evidence submitted herewith demonstrates that the proposed class far exceeds 100 members. The MPSC maintains a list of municipalities that impose a video service provider fee and specifies the amount of such fees. *See* Holman Decl. at Ex. A. According to the MPSC, there are more than 400 municipalities that impose video service provider fees, where such fee exceeds 0%. *Id*. Netflix has compared the list of those political subdivisions that impose video service provider fees of greater than 0% to the political subdivisions with Netflix's records of streaming service subscriptions for customers with Missouri billing addresses. Holman Decl. at ¶ 5. Based upon that direct comparison, Netflix has streaming service subscribers in more than 100 of the political subdivisions in Missouri that impose the video service provider fees at issue. *Id*. at 6. Plaintiff did not provide any evidence in its Motion to Remand demonstrating that the

number of class members does not exceed 100. The only evidence before this Court thus establishes the existence of at least 100 class members.

Nor is this analysis subject to the concern identified by the Court in *City of O'Fallon, Mo. v. CenturyLink, Inc.*, 930 F. Supp. 2d 1035, 1040 (E.D. Mo. 2013). In *City of O'Fallon*, the defendant alleged, but supplied no evidence, that it did business in more than 200 political subdivisions in Missouri, and also failed to confirm whether those political subdivisions imposed the tax at issue in that case. *City of O'Fallon, Mo.*, 930 F. Supp. 2d at 1040.[2] The Court held that it could not determine, based on the record before it, the number of political subdivisions potentially in the putative class. Here, Netflix *has* offered evidence which establishes that it has subscribers with billing addresses in more than 100 political subdivisions that impose a video service provider fee. Holman Decl. at ¶ 6. Defendants have established by a preponderance of the evidence that the potential putative class contains at least 100 members. Nothing more is required.

### 2. The Amount In Controversy Exceeds $5,000,000

Plaintiff's assertion that Defendants did not provide "a shred of evidence" to support the

---

[2] Plaintiff's other cited cases similarly run contrary to the Eighth Circuit's holding in *Raskas*, 719 F.3d at 887, and/or improperly applied a presumption against removal contrary to the Supreme Court's ruling in *Dart*, 135 S. Ct. at 554. For example, in *Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519 (S.D. W. Va. 2011), the court remanded the action because the defendant did not distinguish between class members who had loans serviced in violation of certain laws from those that were not. Here, the Defendants have limited the class size analysis appropriately. In *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150 (D.D.C. 2007), the court applied a presumption against removal, the court stated the burden on removal was "substantial," and the defendant did not submit any evidence in the form of an affidavit or declaration, but merely relied upon unsupported estimates. Here, the Netflix submits a declaration and other evidence establishing that the putative class size exceeds 100 members. Finally, in *Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245 (D. Kan. 2009), the court applied a presumption against removal, claimed the defendant had to prove jurisdiction "to a legal certainty," and ultimately found that the defendant did not provide the calculations to meet the amount in controversy at the time of removal. Here, Netflix provides evidence of its gross revenues and how it has calculated the amount in controversy. Nothing more is required. *See Raskas*, 719 F.3d at 887.

amount in controversy allegations, Pl.'s Mem. Supp. Mot. to Remand at 7, is similarly meritless, because, as the Supreme Court held in *Dart*, no such evidence was required. *See Dart*, 135 S. Ct. at 553-54 (explaining notice of removal need contain only "a short and plain statement of the grounds for removal"); *Hartis*, 694 F.3d at 944-45 (explaining removal is not a demand for proof. "Discovery and trial come later."). Further, when establishing the amount in controversy, the question is not whether the damages *are* greater than the threshold amount, but whether a finder of fact *might* legally conclude that they are. *Raskas*, 719 F.3d at 887; *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009).

To determine whether the matter in controversy exceeds CAFA's $5,000,000 threshold, "the claims of the individual class members shall be aggregated." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C. § 1332(d)(6)). "And those 'class members' include 'persons (named or unnamed) who fall within the definition of the proposed or certified class.'" *Id*. (quoting 28 U.S.C. § 1332(d)(1)(D)). "Once the proponent of federal jurisdiction has explained plausibly how the [amount in controversy] exceed[s] $5 million … then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Raskas*, 719 F.3d at 888. "Even if it is highly improbable that the Plaintiff[] will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Id*.

The amount in controversy here far exceeds $5,000,000. Plaintiff alleges that it and the potential putative class members are entitled to declaratory relief, video service provider fees at a rate of 5% of Defendants' gross revenues for the preceding five years, penalties, and injunctive relief. Pl.'s 1st Am. Pet. at pp. 11-13, ¶¶ 6-8, 15, 37. The value of each of these remedies must be included in calculating the amount in controversy. *See Rakas*, 719 F.3d at 887-88.

Plaintiff seeks back video service provider fees for the preceding five years. Defendants averred in their Joint Notice of Removal that Netflix's gross revenues in municipalities that impose a video service provider fee exceeded $170,000,000, and that Hulu's gross revenues in municipalities that impose a video service provider fee exceeded $90,000,000. Defs.' Joint Not. of Removal at ¶ 27. Netflix's numbers are confirmed in the declaration of Diane Holman, Netflix's Senior Sales Tax Manager, and Hulu's Opposition to Plaintiff's Motion to Remand provides evidence and confirms these earlier allegations with respect to Hulu. Netflix has further analyzed its gross receipts for the previous three years in fifteen jurisdictions that impose video service provider fees. Holman Decl. at ¶ 9.[3] Each of these jurisdictions imposes video service provider fees at the rate of 5%. *Id*. at ¶ 10. Netflix's gross revenues for streaming service subscriptions in these fifteen political subdivisions alone exceeded $105,000,000. *Id*. at ¶ 9. Thus, multiplying $105,000,000 by the 5% video service provider fee, the amount in controversy based solely on these fifteen political subdivisions alone exceeds the $5,000,000 amount in controversy requirement. *Id*. at ¶ 11. When the Court factors in the hundreds of other political subdivisions, *id*. at ¶ 12, Hulu's gross revenues, and the fact that this data is limited to the last three years, there can be no question that Defendants have shown far beyond the threshold for a preponderance of the evidence that the amount in controversy exceeds $5,000,000.[4]

---

[3] Plaintiff also asserts that, "it is unknown whether all of this revenue should be properly considered 'gross revenues.'" Pl.'s Mem. Supp. Mot. to Remand at 7. Netflix has set forth evidence demonstrating that all such revenues are properly included, Holman Decl. at ¶ 8, and the Eighth Circuit has found similar affidavits sufficient. *See, e.g.*, *Raskas*, 719 F.3d at 887 (discounting any alleged over-inclusiveness and explaining that the amount in controversy is "an estimate … not a prospective assessment of the defendant's liability") (internal quotations omitted).

[4] Plaintiff seeks more than video service provider fees, including penalties and injunctive relief, Pl.'s 1st Am. Pet. at pp. 11-13, which are considered in determining the amount in controversy. *Peng Vang v. Mid-Century Ins. Co.*, 2013 WL 626985, at *2 (W.D. Mo. 2013) (to determine amount in controversy, courts look at statutory penalties). Many potential putative class

To overcome Defendants' evidence, Plaintiff would have to "establish that it is legally impossible to recover in excess of the jurisdictional minimum." *See Bell*, 557 F.3d at 959. It has not and cannot do so. In fact, Plaintiff provided absolutely no evidence to challenge jurisdiction here. Plaintiff's Motion to Remand must therefore be denied.

## B.    The Tax Injunction Act Does Not Apply

The TIA was "not designed to prevent taxpayers from defending government collection suits," *Jefferson County,* 527 U.S. at 424, and thus does not apply here. The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.[5] Nowhere in the statute or the legislative history did Congress "announce a sweeping congressional direction to prevent federal-court interference with all

---

members impose penalties, some up to $1,000 per day. *See e.g.* Holman Decl. at ¶ 14. Imposing the maximum penalties for just Florissant and Wildwood adds an additional $3,650,000 in controversy for Netflix alone. *Id*. at ¶ 15; *see Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Similarly, courts value an injunction by looking at the object of the litigation and the cost to a defendant of complying with the injunction. *See Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930-31 (E.D. Ark. 2008). Plaintiff seeks an injunction that requires either payment of video service provider fees or preventing Defendants from doing business in the class cities. Pl.'s 1st Am. Pet. at pp. 11-13. Minimally, this would add $900,000 per year for each Defendant. *See e.g.* Holman Decl. at ¶ 17. Plaintiff asserts that such injunction cannot be considered here. But Plaintiff's citation to Wright & Miller omits that such restriction only applies in a "taxpayer action," which this is not. *See* 14A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. § 3708 (4th ed.). Plaintiff cites no Eighth Circuit authority allowing this Court to ignore the value of the requested injunction here.

[5] The TIA does not apply to regulatory fees. 28 U.S.C. § 1341. There is no clear test for determining whether a statute imposes a tax or a regulatory fee; rather, courts analyze the facts of each case to determine where a particular statute falls on the tax versus fee spectrum. *City of Chattanooga, Tenn. v. Bellsouth Telecommunications, Inc.*, 1 F. Supp. 2d 809, 813 (E.D. Tenn. 1998) ("The characterization of a government assessment as being either a tax or a regulatory fee is rarely a choice between black and white."). The complexity of this determination is demonstrated by the length of Plaintiff's analysis. Pl.'s Mem. Supp. Mot. to Remand at 10-12. Plaintiff's focus on this distinction is misguided because the TIA does not apply to Plaintiff's enforcement action. *Diginet, Inc. v. Western Union ATS, Inc.*, 845 F. Supp. 1237, 1241-42 (N.D. Ill. 1994) (stating the "[TIA] does not preclude jurisdiction over claims by a state entity to enforce the collection, assessment, or levying of taxes").

9

aspects of state tax administration." *Hibbs v. Winn*, 542 U.S. 88, 90 (2004). "[T]he [TIA] bars *anticipatory relief*, suits to stop ('enjoin, suspend, or restrain') the collection of taxes," *Jefferson County*, 527 U.S. at 433 (emphasis added), not defenses from unilateral government action, which is the posture Plaintiff has chosen in the present case.

Plaintiff abruptly filed a class action lawsuit against Defendants without so much as a courtesy notice, let alone an audit, requesting, *inter alia*, declaratory and injunctive relief. This is a nearly identical situation to that in *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, where a taxing authority initiated an action against three cell phone companies, seeking a declaratory judgment that the companies were subject to the city's telecommunications services tax. 531 F.3d 595, 597-98 (8th Cir. 2008). In concluding that the TIA did not preclude federal jurisdiction, the Eighth Circuit recognized that "there is a crucial distinction between a plaintiff who seeks a declaratory judgment that a specific tax is unconstitutional or invalid" (which would be subject to the TIA) "and a plaintiff who seeks a declaratory judgment that a particular taxpayer is engaged in an activity that makes the taxpayer subject to a state or local tax" (which would not). *See id*. at 604. Because *Cingular Wireless* involved a plaintiff (the taxing authority) seeking declaratory judgment that a taxpayer was engaged in an activity that made it subject to tax, the court correctly determined that the TIA did not apply, holding that "because [the plaintiff-city's claim] was not a claim by a taxpayer seeking to prevent tax collection proceedings," the federal district court had jurisdiction over the case. *Id*.; *see also Clackamas County v. Airbnb, Inc.*, 2018 WL 3689900, at *2 (D. Or. 2018) (relying on *Jefferson County* in holding that the TIA did not apply, and finding that "there is no meaningful difference between a suit brought by a tax collector to collect taxes and a suit brought by a tax collector to impose fines, penalties, or other obligations, because neither suit is brought to restrain state action").

10

Here, the Plaintiff brought this suit against Defendants for, among other things, declaratory and injunctive relief, and back fees, penalties, and interest.  Pl.'s 1st Am. Pet. at ¶¶ 38-51.  This is not a case to enjoin, suspend, or otherwise restrain the collection of taxes, nor is Netflix attempting to circumvent any "plain, speedy and efficient remedy" that may be had in the state court.  Plaintiff, without conducting an audit or even contacting Netflix, chose to address the underlying issues in this case by bringing a class action lawsuit in equity against Netflix.  Netflix is merely availing itself of Congress' grant of jurisdiction under CAFA.  The TIA, thus, does not bar federal court jurisdiction in this case.

**C.     There is no Comity Doctrine that Requires Remand Here**

Recognizing its efforts to remand this case lack any legal or factual basis, Plaintiff argues that the comity doctrine requires that "federal courts should not decide cases involving a state's 'fiscal operations,'" or those that involve review of state "commercial matters" generally.  Pl.'s Mem. Supp. Mot. to Remand at 13-14.  Plaintiff has, however, simply made up this standard, which is not supported by any legal authority and the logical extension of which is that comity would bar *all* suits involving *any* state taxes, which flies in the face of every single case analyzing and applying the comity doctrine.  While the comity doctrine is "more embracive" than the TIA, *Levin*, 560 U.S. at 417, it clearly does "not stand for the proposition that a federal court should not hear any action involving state tax law."  *Buchanan County v. Equitable Production Co.*, 773 F. Supp. 2d 638, 640 (W.D. Va. 2011).

Comity is properly applied to limit federal court jurisdiction only in cases where broad challenges to state tax statutes (that would hinder the revenue-raising power of the state taxing system as a whole) outweigh federal district courts' duty to adjudicate cases properly before them.  *Levin*, 560 U.S. at 431-32.  "The comity doctrine counsels lower federal courts to resist

11

engagement in *certain cases* falling within their jurisdiction … [c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Levin*, 560 U.S. at 421 (emphasis added). This is because "deference should be given to state courts to remedy constitutional violations arising from state revenue-raising laws if adequate state remedies exist." *Z&R Cab, LLC v. Philadelphia Parking Authority*, 616 Fed. Appx. 527, 530-31 (3d Cir. 2015).

In *Levin*, the Supreme Court followed this principle and confirmed that the district court had properly dismissed a lawsuit brought by a state taxpayer seeking to circumvent state administrative proceedings to avoid paying state tax, attempting to use the courts to improve its competitive position, and whose successful constitutional challenges would have upended state revenue collection on a broad scale. *Levin*, 560 U.S. at 431-32 (recognizing that these *individual* "considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process"). In fact, every case involving a state tax or fee issue that has been remanded on comity grounds has involved a broad (and in practice, a constitutional) challenge to a state tax statute. *See e.g. infra* pp. 14-15 for a discussion of the cases cited by Plaintiff.

Federal courts have consistently *declined* to find that comity bars jurisdiction in cases (like the case at issue here) where those concerns are not present. In *Buchanan County*, for example, a taxing authority initiated a state court action against two taxpayers seeking a declaratory judgment and monetary relief related to the county's mineral severance tax regime. 773 F. Supp. 2d at 639. After the taxpayers removed the action to federal district court, the county moved for remand, arguing that the TIA and the comity doctrine restricted the court's jurisdiction over the matter. *Id*. The *Buchanan County* court disagreed emphasizing that the

12

cases upon which the county relied (including *Levin*) were limited to their particular circumstances and involved taxpayers who initiated the actions to "challenge[] the constitutionality of a tax and sought federal interference with the state's exaction of the tax." *Id.* at 640. Finding that there was no such challenge to the state tax law and the state taxing regime more broadly in the case before it, the court found that comity considerations did not require remand to state court. *Id.*; *see also Clackamas County*, 2018 WL 3689900 at *2 (comity did not warrant remand in a county-initiated action that sought to impose an existing transient lodging tax on a corporate taxpayer, because the case did not involve a broad state tax matter that risked undue federal interference); *Brown v. Mortgage Electronic Registration System, Inc.*, 2012 WL 12919480 (W.D. Ark. 2012) (comity did not warrant remand in an action seeking to enforce a state tax scheme against the corporate taxpayer, because, unlike in taxpayer-initiated cases, the federal court was not "interven[ing] into [a county]'s tax scheme").[6]

As in *Buchanan County*, *Clackamas County*, and *Brown*, Netflix is not broadly challenging a state tax statute. Indeed, Netflix is not challenging the provisions in question at all. Netflix is simply defending itself against the Plaintiff's overreach in filing a class action lawsuit against the company. The Plaintiff brought this suit arguing that Netflix provides "video service" (as defined by the Act and Ordinances) but has failed to pay Creve Coeur's "video service provider fees." Pl.'s 1st Am. Pet. at ¶¶ 1-4. Netflix, in its Motion to Dismiss, merely argues (defensively) that it does not fall under the purview of the Act or Ordinances based on general principles of statutory interpretation. Netflix does not request any remedial measures that would upend the Plaintiff's revenue collection efforts in general or prevent the Plaintiff from

---

[6] In fact, this Court has adjudicated a similar action that was also removed from state court and brought by this same Plaintiff, albeit related to Plaintiff's business license tax ordinance. *See, e.g., City of Creve Coeur, Missouri v. Commerce Bank, N.A.*, Case No. 4:09-CV-00939-SNLJ (E.D. Mo.)

13

collecting such fees from other entities, provided that such entities are video service providers. None of the parties have invoked any Missouri tax enforcement procedures or regulations. Instead, Netflix requests solely that this Court interpret and apply the Act and the Ordinances to a discreet set of facts. A finding for or against Netflix will merely determine whether or not Netflix must pay the fee.

Plaintiff's reliance on an (unpublished) Eastern District of Missouri case, *City of Maryland Heights v. TracFone Wireless, Inc.*, 2013 WL 791866, at *1 (E.D. Mo. Mar. 4, 2013), which was filed by many of the same attorneys representing the Plaintiff here, is wholly misplaced. *City of Maryland Heights* relied heavily upon *Levin* and both are distinguishable from the present case as they involved broad challenges to the statutes, not limited questions of statutory interpretation as is the case here. In fact, *City of Maryland Heights* Plaintiff's argued that "TracFone is similarly-situated to the natural gas marketers in [*Levin*] who, having alleged discriminatory taxation in violation of the Commerce and Equal Protection Clauses, sought to invalidate three tax exemptions…." *Id.* at Pl.'s Reply Mem. Supp. Mot. to Remand at 13, *City of Maryland Heights v. TracFone Wireless, Inc.*, 2013 WL 791866, No. 4:12-CV-0075 AGF (E.D. Mo. 2013) (Doc. No. 22). Every case cited by Plaintiff can be distinguished on similar grounds or, in several instances, does not even address comity at all. *See Associated Elec. Co-op., Inc. v. Town of Dell*, 2012 WL 2789708 (E.D. Ark. 2012) (comity principles barred federal jurisdiction in a taxpayer-initiated constitutional challenge because federal courts "cannot reshape the relevant provisions of a state's tax code"); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 113-15 (1981) (comity principles barred taxpayer-initiated constitutional challenge where the available remedy "would have had an undeniable chilling effect"); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) (comity principles barred federal

jurisdiction over a taxpayer-initiated constitutional challenge to the state's unemployment compensation regime); *Miller v. City of Greenville, Miss.*, 138 F.2d 712 (8th Cir. 1943) (not explicitly discussing comity but nevertheless dismissing a taxpayer-initiated constitutional challenge); *Dows v. City of Chicago*, 78 U.S. 108 (1870) (not explicitly discussing comity but nevertheless affirming dismissal of a taxpayer-initiated constitutional challenge to a city's tax regime); *see also Diversified Ingredients, Inc. v. Testa*, 846 F.3d 994, 997-98 (8th Cir. 2017), *aff'd*, 2016 WL 2932160 (E.D. Mo. 2016) (affirming lower court's ruling on TIA but declining "to consider whether dismissal was also appropriate under prudential comity principles").[7]

## IV. CONCLUSION

For the foregoing reasons, Netflix respectfully requests that this Court deny Plaintiff Creve Coeur's Motion to Remand.

---

[7] In addition to inventing out of whole cloth an overly broad standard for comity, Plaintiff asserts that in the context of that (made-up) standard this Court should remand this case on comity grounds because state courts are better able to interpret state law, and its requested remedy could only be provided by the state court. Pl.'s Mem. Supp. Mot. to Remand at 14. First, Plaintiff advances these arguments in the context of the wrong legal standard, and thus as a fundamental conceptual matter these concerns are inapposite in this case. Second, these concerns do not apply here on a practical level because federal courts are just as capable of interpreting how the Act and Ordinances apply to the limited facts at issue here, and the state court has no greater leeway in determining a remedy than the federal court would. In this regard, the remedy Plaintiff seemingly requests in its Motion ("to the extent part of Defendants' services ultimately fall within the exclusion to the Act raised by Defendants, or to the extent it is determined that Defendants must pay fees but need not comply with certain other requirements such as emergency alerts, Missouri state courts are better positioned to re-shape the Act in that fashion") concedes that the plain language of the Act and Ordinances does not apply to Netflix. Accordingly, Plaintiff suggests that the Court completely rewrite a duly enacted statute, which for various reasons, including separation of powers concerns, would be an inappropriate remedy in either state or federal court. Remand is not required where "state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy by permitting [those cases] to proceed in a federal forum." *Levin*, 560 U.S. at 431.

15

Dated: October 11, 2018

                                            Respectfully submitted,

                                            BERRY SILBERBERG STOKES PC

                                            <u>/s/ Robert P. Berry</u>
                                            Robert P. Berry, #46236MO
                                            Carol M. Silberberg (*pro hac vice* forthcoming)
                                            David C. Baxter, #62165MO
                                            16150 Main Circle Drive, Suite 120
                                            St. Louis, Missouri 63017
                                            Telephone: (314) 480-5881
                                            Facsimile: (314) 480-5884
                                            Email: rberry@berrysilberberg.com
                                                       csilberberg@berrysilberberg.com
                                                       dbaxter@berrysilberberg.com

                                            REED SMITH LLP
                                            Andres Vallejo (*pro hac vice*)
                                            Priscilla Ayn Parrett (*pro hac vice*)
                                            Rebecca Durham (*pro hac vice*)
                                            101 Second Street, Suite 1800
                                            San Francisco, CA 94105
                                            Telephone: (415) 543-8700
                                            Facsimile: (415) 391-8269
                                            Email: avallejo@reedsmith.com
                                                     pparrett@reedsmith.com
                                                      rdurham@reedsmith.com
                                            *Attorneys for Netflix, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2018, the foregoing was submitted electronically for filing through this Court's CM/ECF system to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                              */s/ Robert P. Berry*