**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

CITY OF CREVE COEUR, MISSOURI, on behalf of itself and all others similarly situated,

Plaintiffs,

vs.

NETFLIX, INC. and HULU, LLC,

Defendants.

No. 4:18-cv-01495-SNLJ

**CLASS ACTION**

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT[1]**

[1] This combined reply responds to both Hulu's and Netflix's oppositions to Plaintiffs' motion to remand. *See* Docs. 36, 38.

## Table of Contents

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Defendants still have failed to unambiguously show that this Court has CAFA jurisdiction. .......... 2

II. Missouri's state courts are best positioned to decide the novel question of whether Defendants must pay fees under Missouri's Video Services Providers Act. .......... 5

A. This case is precisely the type for which the comity doctrine calls for remand. .......... 6

B. Creve Coeur has not "waived" the right to seek remand simply by filing a motion for consolidation. .......... 13

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*American Home Assurance Co. v. RJR Nabisco Holdings Corp.*,
70 F. Supp. 2d 296 (S.D.N.Y. 1999)....................14

*Benjamin v. Natural Gas Pipeline Co. of Am.*,
793 F. Supp. 729 (S.D. Tex. 1992)....................14

*Brown v. Mortg. Elec. Registration Sys., Inc.*,
No. 6:11-CV-06070, 2012 WL 12919480 (W.D. Ark. July 26, 2012)....................11

*Buchanan County v. Equitable Prod. Co.*,
773 F. Supp. 2d 638 (W.D. Va. 2011)....................11

*Byrd v. TVI, Inc.*,
No. 4:15 CV 1439 CDP, 2015 WL 5568454 (E.D. Mo. Sept. 21, 2015)....................4

*Caufield v. EMC Mortg. Co.*,
803 F. Supp. 2d 519 (S.D. W. Va. 2011)....................4

*City of Jefferson City, Mo. v. Cingular Wireless, LLC*,
531 F.3d 595 (8th Cir. 2008)....................6

*City of Maryland Heights v. TracFone Wireless, Inc.*,
No. 4:12CV00755 AGF, 2013 WL 791866 (E.D. Mo. Mar. 4, 2013)....................5, 6, 11, 12

*City of Milwaukee v. Koeffler*,
116 U.S. 219 (1886)....................8

*City of Webster Groves v. Erickson*,
789 S.W.2d 824 (Mo. App. E.D. 1990)....................5

*Clackamas County v. Airbnb, Inc.*,
No. 3:17-CV-1611-PK, 2018 WL 3689900 (D. Or. Aug. 3, 2018)....................11

*Commerce Energy, Inc. v. Levin*,
554 F.3d 1094 (6th Cir. 2009), *rev'd and remanded*, 560 U.S. 413 (2010)....................9, 10

*Coors Brewing Co. v. Mendez-Torres*,
678 F.3d 15 (1st Cir. 2012)....................14

*Dows v. City of Chicago*,
78 U.S. (11 Wall) 108 (1870)....................1, 6, 7

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
454 U.S. 100 (1981).................... *passim*

*Farneth v. Wal-Mart Stores, Inc.*,
No. 2:13-CV-01062, 2013 WL 6859013 (W.D. Pa. Dec. 30, 2013) ........................2, 10, 12, 13

*Fredrickson v. Starbucks Corp.*,
840 F.3d 1119 (9th Cir. 2016) ..........................................................................1, 2, 10

*Great Lakes Dredge & Dock Co. v. Huffman*,
319 U.S. 293 (1943)........................................................................................................7

*Gwozdz v. HealthPort Techs., LLC*,
846 F.3d 738 (4th Cir. 2017) ........................................................................................13

*Healy v. Ratta*,
292 U.S. 263 (1934)........................................................................................................4

*Hensgens v. Deere & Co.*,
833 F.2d 1179 (5th Cir. 1987) ......................................................................................13

*Hibbs v. Winn*,
542 U.S. 88 (2004)..........................................................................................................8

*Jefferson Cty., Ala. v. Acker*,
527 U.S. 423 (1999)........................................................................................................6

*Levin v. Commerce Energy, Inc.*,
560 U.S. 413 (2010)........................................................................................... *passim*

*Levy v. Pappas*,
510 F.3d 755 (7th Cir. 2007), *abrogated by Levin*, 560 U.S. 413 ......................................8, 10

*Miller v. City of Greenville, Miss.*,
138 F.2d 712 (8th Cir. 1943) ..........................................................................................7

*Normand v. Cox Commc'ns, LLC*,
848 F. Supp. 2d 619 (E.D. La. 2012)...........................................................................11

*Orange Cty. v. Expedia, Inc.*,
440 F. Supp. 2d 1341 (M.D. Fla. 2006)...........................................................................6

*Piedmont Gardens, LLC v. Leblanc*,
168 F. Supp. 3d 391 (D. Conn. 2016), *aff'd*, 733 F. App'x 576 (2d Cir. 2018) ......................10

*Pittsburgh, C., C. & St. L. Ry. Co. v. Bd. of Pub. Works of W. Va.*,
172 U.S. 32 (1898)..........................................................................................................8

*Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*,
865 F.3d 537 (7th Cir. 2017) ..........................................................................................5

*SWC Inc. v. Elite Promo Inc.*,
234 F. Supp. 3d 1018 (N.D. Cal. 2017) ........................................................................14

*Waters v. Ferrara Candy Co.*,
873 F.3d 633 (8th Cir. 2017) ..........................................................................................2, 3

*Wilbur v. Locke*,
423 F.3d 1101 (9th Cir. 2005), *abrogated by Levin*, 560 U.S. 413 ..........................................9

**Statutes**

28 U.S.C. § 1341.....................................................................................................................5

28 U.S.C. § 1447...................................................................................................................13

Mo. Rev. Stat. § 67.2689 .........................................................................................................3

## INTRODUCTION

Defendants agree that this dispute is about Missouri political subdivisions seeking to enforce a Missouri revenue-raising statute. Creve Coeur alleges that Netflix and Hulu have been providing video service in Missouri municipalities without paying fees pursuant to Missouri's Video Services Providers Act. Hulu and Netflix of course fervently deny any obligation under the Act and desire to continue earning significant revenue in Missouri without paying fees.

For over a century, the Supreme Court has recognized that "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *See Dows v. City of Chicago*, 78 U.S. (11 Wall) 108, 110, (1870). Thus, based on principles of comity and federalism, federal courts show a "proper reluctance to interfere" with state-level revenue-raising. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 422 (2010) (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)).

Even though the Court has recognized these principles for almost 150 years, Defendants argue that the comity doctrine is a narrow one. They argue comity only applies if there is a constitutional challenge to the taxing scheme, or, as Netflix puts it, when a taxpayer broadly tries to "hinder the revenue raising power of the state taxing system." Doc. 38 at 2. The Supreme Court in *Levin*, however, rejected such a narrow interpretation, overruling a line of cases that held the doctrine applies only when taxpayers attempt to "reduce the flow of state tax revenue" or "try to thwart tax collection." *See* cases discussed *infra* at 8-10.

The Ninth Circuit was one of the courts overruled by *Levin*. In light of this, it recently rejected an argument similar to that made by Defendants. *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119, 1124–25 (9th Cir. 2016). The Ninth Circuit held that the absence of a federal

constitutional challenge "actually strengthens" the need for comity "[p]recisely because the plaintiffs' claims turn solely on the proper interpretation of state law, … which Oregon's courts are better equipped to resolve." *Id.* Or as another case stated, even if a defendant is not "questioning the validity" of the tax, the quarrel still focuses "on how [the] Tax is to be collected and remitted under state law," making it "precisely the kind of state tax case" that should be remanded. *Farneth v. Wal-Mart Stores, Inc.*, No. 2:13-CV-01062, 2013 WL 6859013, at *2–6 (W.D. Pa. Dec. 30, 2013).

Netflix and Hulu ask this Court to ignore this precedent and to adopt a narrow view of the comity doctrine. But the "scrupulous regard for the rightful independence of state governments" and "their fiscal operations" requires that position to be rejected. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 108 (1981) (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)). After all, "the reasons supporting federal noninterference [with state taxation] are just as compelling today as they were in 1937." *Id.* at 112–13 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 527 (1981)).

## ARGUMENT

### I. Defendants still have failed to unambiguously show that this Court has CAFA jurisdiction.

Before discussing the comity argument, it is first necessary to assess whether the Court even has jurisdiction under the Class Action Fairness Act. Because Creve Coeur challenged the sufficiency of Defendants' removal allegations, Defendants bear the burden of showing by a preponderance of the evidence that removal was proper. *See Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). A removing defendant can combine specific factual allegations with reasonable deductions and inferences, but the preponderance of the evidence standard is not

satisfied if the court must resort to "conjecture, speculation, or star gazing." *Id.* (quotation omitted).

While Defendants have now come forward with affidavits to support their allegations, they still fail to provide any true evidence that would meet the preponderance-of-the-evidence standard. Neither Hulu nor Netflix submit any corporate records to support their claims regarding the number of cities in which they do business or to support the revenue numbers they offer. And it remains unclear how they used the Missouri Public Service Commission's website to gather the information offered.

For instance, both Netflix and Hulu offer old video service authorizations issued by the Missouri Public Service Commission to support their jurisdictional claims. Hulu relies on "a list of the Missouri municipalities in which AT&T Missouri has received … authorization." Doc. 37 at ¶ 4. The exhibit reveals that AT&T received all of these authorizations in 2008 or 2009, so it is impossible to tell from this exhibit whether the cities still impose the fee or whether the percentage has changed during the intervening decade.[2] Doc. 37-2. Using Greene County as an example, the exhibit shows the county assessed a 5% fee on AT&T at the time of its 2009 authorization. *Id.* Yet in 2014 Greene County authorized Suddenlink to operate at a 0% fee, meaning the percentage listed for AT&T is likely no longer valid.[3] Indeed, the PSC's website warns that the "[f]ee is as of the date the application was submitted."[4]

---

[2] Municipalities may change the fee charged so long as they give providers 90 days' notice. Mo. Rev. Stat. § 67.2689(4).

[3] *See* Search Results for Cable Companies and Rates, Greene County, attached as Exhibit A to Declaration of Garrett Broshuis in Support of Plaintiffs' Combined Reply in Support of Motion to Remand (*also available at* https://www.efis.psc.mo.gov/mpsc/VideoFranchiseAuthorization.html). This is not an isolated instance, as the PSC's website shows that many other municipalities appear to have changed their rates from the time of one authorization to the next.

[4] *Id.*

Similarly, Netflix claims that "there are more than 400 municipalities in Missouri that impose video service provider fees," Doc. 38-1 at ¶ 3, but its exhibit relies on authorizations that mostly occurred between 2008 and 2013. Given that these old authorizations form the starting point for Defendants' analyses, the entirety of their calculations cannot be relied upon.

Even if the calculations were reliable, Hulu still fails to meet the $5 million threshold required for CAFA jurisdiction; the currently-offered number of $2.75 million is well short. *See* Doc. 36 at 4. Defendants (and particularly Hulu, Doc. 36 at 5) resort to municipal penalty provisions to shore up their amount-in-controversy numbers, pointing to the "wherefore" clauses in Creve Coeur's petitions. Doc. 36 at 4; Doc. 38 at 8 n.4. But simply pointing to "rote 'Wherefore' clauses in the petition" is insufficient where there is "no evidence in the form of discovery responses or settlement offers to suggest that these damages might be awarded in this case." *Byrd v. TVI, Inc.*, No. 4:15 CV 1439 CDP, 2015 WL 5568454, at *4 (E.D. Mo. Sept. 21, 2015).

By Hulu's own admission, it "has not yet done a city-by-city analysis of these potential penalties." Doc. 36 at 5. Yet "[i]n order to demonstrate a basis for federal jurisdiction, the party seeking removal must present facts rather than speculation. … Merely multiplying" the penalties for a handful of cities without showing that the penalty provisions for those cities even apply "cannot constitute a sufficient basis for removal jurisdiction under CAFA." *Caufield v. EMC Mortg. Co.*, 803 F. Supp. 2d 519, 527–28 (S.D. W. Va. 2011); *see also Healy v. Ratta*, 292 U.S. 263, 268–69 (1934) ("objects which are merely collateral or incidental to the determination of the issue raised by the pleadings," such as incidental penalties, are not considered part of the amount in controversy when "the right to do the business or the injury to it is the matter in controversy"). That is particularly true given the provisions Defendants point to for municipal

ordinance violations are generally deemed quasi-criminal instead of civil in nature. *See City of Webster Groves v. Erickson*, 789 S.W.2d 824, 826 (Mo. App. E.D. 1990). For instance, Defendants provide two examples of penalty provisions, and both refer to persons being found "guilty" and call for "punish[ment]" that could include imprisonment. *See* Exs. B & C to Doc. 38-1 (pages 73 to 75). "In legal effect, this means a prosecution for the violation of a municipal ordinance … [resembles] … a criminal action in its effects and consequences." *Webster Groves*, 789 S.W.2d at 826 (quotation omitted). As a result, the rules of criminal procedure apply when prosecuting such an ordinance violation, including the standard of proof beyond a reasonable doubt. *Id.* Those rules obviously are not part of a civil action.

Thus, Defendants had an opportunity to submit evidence, yet they still rely on conjecture and speculation. They have not met their burden of establishing they properly removed this case.

## II. Missouri's state courts are best positioned to decide the novel question of whether Defendants must pay fees under Missouri's Video Services Providers Act.

The Supreme Court has "repeatedly cautioned" that "[s]tatutes conferring federal jurisdiction … should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 423 (2010) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). This admonition applies with equal force to CAFA, which is "such a jurisdictional statute." *Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017); *accord City of Maryland Heights v. TracFone Wireless, Inc.*, No. 4:12CV00755 AGF, 2013 WL 791866, at *1 (E.D. Mo. Mar. 4, 2013).

There are two complimentary doctrines that call for remand here, one statutory and one common law. First, the Tax Injunction Act prohibits federal district courts from "enjoin[ing], suspend[ing] or restrain[ing] the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

Defendants argue that the TIA does not apply to claims brought by the taxing entity against the taxpayer. Defendants' cases are distinguishable.

Unlike here, *Jefferson County* involved a federal question arising under the federal officer removal statute because it was a collection suit against two federal judges. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 435 (1999). It did not involve an action for declaratory judgment or injunctive relief. *See Orange Cty. v. Expedia, Inc.*, 440 F. Supp. 2d 1341, 1343 (M.D. Fla. 2006) (distinguishing *Acker* on these grounds). Moreover, in *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595, 604 (8th Cir. 2008)—and also unlike here—the city brought the action *in federal court* instead of initiating it in state court, so the taxing authority consented to federal jurisdiction. *See Maryland Heights*, 2013 WL 791866, at *4 n.2 (distinguishing *Jefferson City* on these grounds but deciding the case on the basis of comity).

Regardless of whether the TIA applies, though, the common law doctrine of comity calls for remand here. This doctrine can apply even when the TIA does not, for it is "more embracive" than the TIA. *Levin*, 560 U.S. at 424. "Neither the legislative history of the [TIA] nor that of its precursor, … suggests that Congress intended that federal-court deference in state tax matters be limited to the actions enumerated in [the TIA's] sections." *Fair Assessment*, 454 U.S. at 110. This case falls squarely within the comity doctrine.

**A. This case is precisely the type for which the comity doctrine calls for remand.**

As pointed out in Creve Coeur's opening brief, for nearly 150 years the Supreme Court has consistently held that federal courts should refrain from interfering with local governments' revenue-collection schemes. *See, e.g.*, *Dows v. City of Chicago,* 78 U.S. (11 Wall.) 108, 110 (1870); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421–24 (2010). The Court has noted the "peculiar force" of this doctrine, *Fair Assessment*, 454 U.S. at 108, and it differs from ordinary

abstention doctrines. Hulu states in its opening paragraph that *Colorado River* abstention principles "require the denial of Plaintiff's motion," but that is inaccurate. Indeed, neither *Levin* nor its predecessor *Fair Assessment* ever mentions *Colorado River* or hints that the comity doctrine should be "the exception, not the rule," as Hulu suggests.

Instead, the controlling principles are found in the Supreme Court's comity decisions extending from *Dows* in 1870 to *Levin* in 2010. As explained in *Levin*, "the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin*, 560 U.S. at 417. Or as the Eighth Circuit has put it, the comity doctrine is an instance where courts have spoken with "peculiar clarity," meaning federal courts "must … refuse to take cognizance" over such matters. *Miller v. City of Greenville, Miss.*, 138 F.2d 712, 719 (8th Cir. 1943).

The Supreme Court has repeatedly painted a broad portrait of the doctrine, saying that a "proper reluctance" to interfere with states' "fiscal operations … require" abstention so long as federal rights may be preserved, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297–98 (1943), that "the modes adopted to enforce the taxes levied should be interfered with as little as possible," *Dows*, 78 U.S. (11 Wall.) at 110, and that the doctrine has "particular force" when it comes to adjudicating "the taxation of commercial activity," *Levin*, 560 U.S. at 421. So while Netflix accuses Creve Coeur of "ma[king] up" a standard by using the phrases "fiscal operations" and "commercial matters," Doc. 38 at 11, these terms have been used by the Supreme Court for over a century.

Defendants try to avoid the Court's broad language by claiming the doctrine only applies to "broad taxpayer challenges" that "would hinder the revenue raising power," Doc. 38 at 2, or to cases that "challenged the constitutionality of a tax," Doc. 36 at 8–9. Netflix even goes so far as

to claim that "every case" remanded under the doctrine involved a "broad (and in practice, constitutional) challenge to a state tax statute." Doc. 38 at 12. That is inaccurate.

To begin with, while many Court decisions forming the doctrine's genesis discussed a constitutional challenge, not all of them did.[5] And while Defendants have not yet raised a constitutional challenge, they may still do so given that they have not yet answered Creve Coeur's petition. Indeed, Netflix repeatedly complains of a lack of notice, Doc. 38 at 1, 10, even though the only notice requirement at issue is the requirement that Defendants provide notice before doing business in Missouri municipalities.

More importantly, a full understanding of the events leading to the Supreme Court's most recent comity decision severely undercuts Defendants' argument. In 1981, the Supreme Court decided *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 108 (1981). The Court confirmed that the comity doctrine remained broader than the Tax Injunction Act, and that it still carried "peculiar force." *Id.* In doing so, the Court repeated the broad language it had consistently used to describe the doctrine. *Id.* A little over two decades later, however, the Court stated in a footnote in another case that the comity doctrine had only been used when a plaintiff attempted to "arrest or countermand state tax collection." *Hibbs v. Winn*, 542 U.S. 88, 107 n.9 (2004). This footnote led some lower courts to interpret the comity doctrine more narrowly. Three circuits—the Sixth, Seventh, and Ninth—adopted positions similar to that urged by Defendants here, holding that comity is limited to when plaintiffs seek to "reduce the flow of state tax revenue" as opposed to "increase[ing] the state's tax revenues,"[6] or when the plaintiff

[5] *See, e.g.*, *City of Milwaukee v. Koeffler*, 116 U.S. 219, 219 (1886) (no mention of constitutional issues); *Pittsburgh, C., C. & St. L. Ry. Co. v. Bd. of Pub. Works of W. Va.*, 172 U.S. 32, 40 (1898).
[6] *Levy v. Pappas*, 510 F.3d 755, 761 (7th Cir. 2007), *abrogated by Levin*, 560 U.S. 413.

sought to "arrest or countermand state tax collection,"[7] or "only when plaintiffs try to thwart tax collection."[8]

With its 2010 *Levin* opinion, the Supreme Court overruled those decisions. In the Court's opening paragraph, it reinforced the central holding of *Fair Assessment*: the comity doctrine is "[m]ore embracive than the TIA," is "applicable in state taxation cases," and "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." 560 U.S. at 417. It later reiterated that it "is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." 560 U.S. at 421–22 (quoting *Dows*, 11 Wall. at 110). And it again reiterated that there should be "a proper reluctance" to hear cases involving "the fiscal operations of the state governments." *Id.* at 422 (quoting *Boise Artesian*, 213 U.S. at 282, and *Matthews*, 284 U.S. at 525–26).

It is true that *Levin* also stated that "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Levin*, 560 U.S. at 421. But nowhere does *Levin* indicate that comity *only* applies when a taxpayer seeks to "hinder the revenue raising power" or raises a constitutional challenge, as Defendants argue. *See* Doc. 38 at 2 (argument that comity applies only when taxpayer seeks to hinder revenue raising); Doc. 36 at 8–9 (argument that comity is "limited" to constitutional challenges); Doc. 38 at 12 (argument that it is limited to constitutional challenges). Injecting this requirement would ignore the broad language consistently used by the Court. And it would

[7] *Wilbur v. Locke*, 423 F.3d 1101, 1110 (9th Cir. 2005), *abrogated by Levin*, 560 U.S. 413.

[8] *Commerce Energy, Inc. v. Levin*, 554 F.3d 1094, 1099 (6th Cir. 2009), *rev'd and remanded*, 560 U.S. 413 (2010).

ignore the fact that *Levin* was overruling cases that held the doctrine only applies when plaintiffs try to "reduce the flow of state tax revenue"[9] or "try to thwart tax collection."[10]

It would truly make little sense for the doctrine to require courts to abstain when there are federal constitutional questions but not abstain when there are only state law questions. That would be an upside-down doctrine. Not surprisingly, courts have rejected that argument.

In *Fredrickson v. Starbucks Corp.*, for instance, the plaintiffs brought a class action that turned on the interpretation of a state tax law. 840 F.3d 1119, 1124–25 (9th Cir. 2016). After Starbucks removed the case to federal court under CAFA, it argued against remand because the relief sought did "not aim to invalidate Oregon's tax laws as unconstitutional or to drag state officers into federal court to defend those laws." *Id.* at 1124. The Ninth Circuit, however, held that the absence of a federal constitutional challenge "actually strengthen[ed] the case for comity." *Id.* at 1125. "Precisely because the plaintiffs' claims turn solely on the proper interpretation of state law, there is no federal interest involved in the dispute, which Oregon's courts are better equipped to resolve given their greater familiarity with the nuances of state tax law." *Id.*

The court reached the same result in the class action of *Farneth v. Wal-Mart Stores, Inc.*, No. 2:13-CV-01062, 2013 WL 6859013, at *2–6 (W.D. Pa. Dec. 30, 2013). After removing under CAFA, Wal-Mart argued that "Mr. Farneth is not questioning the validity of the state [tax] Regulation," so comity concerns did not apply. *Id.* at *3. The court rejected that argument; the case involved "a quarrel focusing on how Sales Tax is to be collected and remitted under state law," and state courts were "better positioned" to resolve that quarrel, making it "precisely the kind of state tax case" that should be remanded. *Id.* at *4, 6; *see also Piedmont Gardens, LLC v.*

---

[9] *Levy*, 510 F.3d at 761.
[10] *Commerce Energy*, 554 F.3d at 1099.

*Leblanc*, 168 F. Supp. 3d 391, 399 (D. Conn. 2016), *aff'd*, 733 F. App'x 576 (2d Cir. 2018) (rejecting a similar argument and remanding because the case sought "a federal-court ruling on a local tax matter," which is "precisely the type of suit" that comity is "intended to prohibit").

Even one of the cases that Hulu relies upon rejected Defendants' position as overly narrow. *Normand v. Cox Commc'ns, LLC*, 848 F. Supp. 2d 619, 624–25 (E.D. La. 2012) (relied upon in Doc. 36 at 9, 11). "[L]imiting *Levin* as Cox suggests does not speak to the Supreme Court's other stated reasons for providing the comity doctrine a broader scope than the TIA." *Id.* at 624. And while the *Normand* court did find that Cox planned to defend itself by raising a due process claim, the presence of that defense was not outcome-determinative, as it was just one of five factors examined. *Id.* at 625. In the end, the breadth of *Levin* required remand because it "expressed concern about federal involvement in a state's tax 'scheme,'" and "carved out broader conceptual space for the comity doctrine to preserve state autonomy in cases like this." *Id.* Thus, a federal court should avoid "tinkering with a state's tax enforcement mechanisms" when "[h]undreds of thousands of dollars of potential tax revenue hinge upon" the court's "determination of the tax's applicability." *Id.* at 624–25.[11]

Defendants attempt to distinguish this Court's ruling in *City of Maryland Heights v. TracFone Wireless, Inc.*, 2013 WL 791866, at *1. Netflix claims the case "involved broad challenges to the statutes," Doc. 38 at 14, while Hulu argues that the case turned on the

[11] Another case cited by Defendants, *Buchanan County v. Equitable Prod. Co.*, 773 F. Supp. 2d 638, 640 (W.D. Va. 2011), did reach the conclusion that Defendants seek. But it contained just a single paragraph for its entire comity analysis, and did not analyze the cases leading up to *Levin* or the broad language consistently used by the Supreme Court when discussing the doctrine. The two other cases relied upon by Defendants are similarly unpersuasive. In *Brown v. Mortg. Elec. Registration Sys., Inc.*, the Court simply followed *Buchanan* in holding that no constitutional challenge had been raised, and without recognizing that *Levin* had overruled cases limiting the doctrine to instances where plaintiffs try to thwart tax collection. No. 6:11-CV-06070, 2012 WL 12919480, at *3 (W.D. Ark. July 26, 2012). And in *Clackamas County v. Airbnb, Inc.*, the court declined to remand because it held that the state law issues were not complicated. No. 3:17-CV-1611-PK, 2018 WL 3689900, at *2 (D. Or. Aug. 3, 2018). Putting aside that this misreads *Levin* and its predecessors, the dispute in the present case will instead require resolving novel questions of state law embedded in Missouri's scheme for video-service providers.

constitutional challenge presented by TracFone when defending Maryland Heights' lawsuit, Doc. 36 at 10. It cannot be disputed, however, that Maryland Heights stood in the same exact position as Creve Coeur does in this case: as a plaintiff-municipality seeking to bring a class action when a company did business within Missouri municipalities without paying required fees. And the decision to remand certainly did not turn on the presence of a constitutional defense raised by TracFone. In its analysis, this District Court first recognized that TracFone sought "federal-court review of commercial matters over which [Missouri and Missouri municipalities] enjoy wide regulatory latitude." *Id.* at *3 (quoting *Levin*). It next recognized that the case would involve a matter of interpreting Missouri's tax laws, and "[w]ithout question the state court is more familiar with Missouri's tax laws and the intent of the Missouri legislature." *Id.* Only then did this Court note that TracFone's federal constitutional defenses did not provide a reason for retaining jurisdiction because they did not involve "any fundamental right." *Id.* So the significance of the constitutional challenge was not its presence but the fact that it did not involve a fundamental right—meaning any federal rights "could otherwise be preserved unimpaired." *Fair Assessment*, 454 U.S. at 109. Since there are no federal rights in this case, nothing precludes the comity doctrine from applying.

Moreover, Netflix and Hulu—no different than TracFone—are indeed interpreting the Missouri Act in a way that hinders the collection of revenue. This first-of-its kind case will require a court to interpret Missouri's fee scheme for video-service providers in the context of video-streaming technology. And similar to *Farneth v. Wal-Mart*, the case before the Western District of Pennsylvania, "for the Court to determine whether [Defendants] did, or did not, violate [the tax], it would have to discern and then apply the [Missouri statute]." 2013 WL 6859013, at *3. And just as Wal-Mart there argued that the matter should be one for the

Pennsylvania Department of Revenue, Hulu and Netflix have argued that this entire matter should be up to the Missouri PSC rather than the courts. *Compare* Doc. 13 at 9 (Creve Coeur's "issue is with the PSC and not Hulu") *and* Doc. 10 at 9 ("[t]he MPSC is the only entity that may grant a video service authorization") *with Farneth*, 2013 WL 6859013, at *6. For the *Farneth* court, this made it "precisely the kind of state tax case" that should be remanded. *Id.* at *6.

In the end, Defendants ask this Court to adopt the truncated view of comity rejected by *Levin*. They also ask this Court to ignore the repeated proclamation that the comity doctrine extends further than the Tax Injunction Act. But as the Fourth Circuit recently stated in a case that similarly involved no constitutional challenge, "if comity is to mean anything, it would seemingly restrain the prospect of federal court orders disrupting a state's efforts to collect its life blood of revenue pursuant to the state's own law." *Gwozdz v. HealthPort Techs., LLC*, 846 F.3d 738, 743 (4th Cir. 2017). In their motions to dismiss, Netflix and Hulu ask for just that—disruption of Missouri cities' efforts to collect revenue pursuant to state law. That dispute will be best resolved by Missouri's state courts.

**B. Creve Coeur has not "waived" the right to seek remand simply by filing a motion for consolidation.**

Except for when a court lacks subject matter jurisdiction—which can be raised at any time—the removal statute allows a plaintiff 30 days to file a motion to remand. 28 U.S.C. § 1447. There is no question that Creve Coeur filed its remand motion in a timely manner. Nonetheless, Hulu (but not Netflix) makes a final argument that Creve Coeur "waived" "any comity concern" by filing a motion to consolidate. Doc. 36 at 11.

First, Creve Coeur cannot waive the right to seek remand for lack of subject-matter jurisdiction. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1180 (5th Cir. 1987) ("subject matter jurisdiction cannot be waived"). Second, and as evidenced by its timely motion to remand, there

has been no waiver because Creve Coeur has "[f]rom the outset … claimed the protection of comity." *Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 27 (1st Cir. 2012) (merely litigating the case while maintaining that comity applies does not amount to acquiescence to federal jurisdiction).

Defendants cite to *American Home Assurance Co. v. RJR Nabisco Holdings Corp.* for the proposition that a party "ratifie[s] removal by seeking consolidation." 70 F. Supp. 2d 296, 299 (S.D.N.Y. 1999). But the problem in *American Home* was that the plaintiff chose "not to seek remand within the 30 day period," making its motion untimely. *Id.* Moreover, "[i]n the cases where courts have found a waiver, the plaintiff generally took *considerable* affirmative action in proceeding with the dispute in federal court," such as "attending depositions, participating in substantial discovery, and failing to move for remand until after significant progress has been made in the federal action." *Benjamin v. Natural Gas Pipeline Co. of Am.*, 793 F. Supp. 729, 733 (S.D. Tex. 1992) (emphasis in original); *see also SWC Inc. v. Elite Promo Inc.*, 234 F. Supp. 3d 1018, 1023 (N.D. Cal. 2017) ("Courts generally have not found waiver where a plaintiff undertakes minimal or expected case-management obligations once a case is removed.").

Creve Coeur has not made any substantive motion and has not conducted any discovery but has instead sought to consolidate overlapping cases—a routine case-management procedure. It sought remand in a timely manner and has not waived the right to do so.

**CONCLUSION**

For the foregoing reasons, Creve Coeur's motion should be granted, and the District Court should remand this action to the Circuit Court of St. Louis County.

Dated: October 25, 2018

/s/ *Garrett R. Broshuis*

**KOREIN TILLERY, LLC**
GARRETT R. BROSHUIS
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
gbroshuis@koreintillery.com

John F. Mulligan, Jr., #34431
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 725-1135
Fax. (314) 727-9071
Howard Paperner, P.C. #23488
9322 Manchester Road
St. Louis, MO 63119
Tel. (314) 961-0097
Fax. (314) 961-0667

Carl J. Lumley, #32869
Curtis, Heinz, Garrett & O'Keefe, P.C.
130 S. Bemiston, Ste. 200
Clayton, MO 63105
Tel. (314) 725-8788
Fax. (314) 725-8789

Elkin L. Kistner, #35287
Bick & Kistner PC
101 South Hanley, Ste. 1280
Clayton, MO 63105
Tel. (314) 727-0777
Fax. (314) 727-9071

*Attorneys for Plaintiffs, individually and on behalf of all those similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ *Garrett R. Broshuis*